Pauly v. Keebler, 175 Wis. 428.

PAULY, Plaintiff in error, vs. KEEBLER, Defendant in error.

*October 21—December 13, 1921.*

*Mechanics' liens: Principal contractor as trustee for lien claimants: Validity of statute: Constitutionality: Due process of law: Equal protection of the laws: Imprisonment for debt: Embezzlement: Criminal intent: Who are beneficiaries of trust.*

1. The first article of the declaration of rights in the state constitution is a substantially equivalent limitation of legislative power to that imposed by the Fourteenth amendment to the federal constitution, and the legislature is bound to accord to all persons the equal protection of the laws and refrain from legislation depriving any one of life, liberty, or the pursuit of happiness.

2. Within the constitutional provision requiring due process of law or its equivalent, the law of the land, a statute duly enacted by the legislature is not necessarily the law of the land if it is so arbitrary and capricious as to deprive the citizen of fundamental rights guaranteed by the constitution.

3. Statutes do not in all cases deprive citizens of due process of law merely because they are limited to particular classes, since the legislature can make classifications to promote the general welfare if there exists such reasonable ground for the classifications as to show that they are not arbitrary and personal or do not unjustly discriminate between different classes of individuals.

4. A statute which applies to all individuals similarly situated does not deny equal protection of the laws, though it is invalid if individuals or corporations are singled out for the imposition of burdens or as beneficiaries.

5. Sub. 3, sec. 3315, Stats., which makes it embezzlement for a principal contractor receiving money from a landowner to appropriate it for his own use without paying those persons entitled to a lien on the land, is constitutional, as it benefits every property owner irrespective of the value of his holdings, and under certain circumstances might be a protection to all laborers, subcontractors, and materialmen. The legislature may therefore constitute the moneys so received by the principal creditor a trust fund and punish its misappropriation as an embezzlement.

6. Said sub. 3, sec. 3315, though it does not expressly prescribe that the prohibited act must be with fraudulent intent, implies a wrongful intent by the use of the term "embezzlement,"

Pauly v. Keebler, 175 Wis. 428.

and a conviction cannot be had thereunder without proof of an intent to defraud, the same as such proof must be made in a prosecution under sec. 4418. (JONES, J., is of the opinion that it is competent for the legislature to create the offense of embezzlement without mention in the act of criminal intent.)

7. Said sub. 3, sec. 3315, does not violate sec. 16, art. I, Const., providing that no person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied.

8. Statutes are to be upheld by the courts unless they are unconstitutional beyond any reasonable doubt.

9. All legislative powers not withheld or limited by the constitution of the state or the exercise of which is not prohibited by the federal constitution are vested in the legislature, and courts cannot set aside statutes merely because they may be deemed unwise or may work inconvenience or hardship.

10. Sub. 3, sec. 3315, is not limited to cases where a claim of lien has been filed, but it does not apply where the right to a lien has been lost.

ESCHWEILER, J., dissents in part.

ERROR to review an order of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

For the plaintiff in error the cause was submitted on the brief of *A. W. Richter* of Milwaukee.

*Allen D. Young,* district attorney of Waukesha county, for the defendant in error.

JONES, J. This is a writ of error prosecuted by the plaintiff in error from an order entered in the circuit court for Waukesha county remanding plaintiff in error to custody after the issuance of a writ of *habeas corpus.*

The defendant is charged with the embezzlement of $1,200 from one Volbrecht under the provisions of sub. 3, sec. 3315, Stats. At the preliminary hearing it appeared that defendant agreed to construct a house for Volbrecht for $1,950; that Volbrecht paid defendant $1,770; that defendant accounted for $500 of this money; that at the time of the account there was due to one Lang about $1,000 for lumber; that there were a few labor bills due, and that he had spent a good share of the money for living expenses, and

·that twice after this accounting defendant had said he would pay the foregoing claims.

The defendant moved the court for an order of discharge on the ground that the state had failed to show that a crime had been committed. The motion was denied and the defendant was bound over to the regular term of the municipal court for trial. Thereupon defendant sued out a writ of *habeas corpus,* which was granted, and after a hearing he was remanded to custody.

It is claimed by plaintiff in error that the statute under which this action was brought is unconstitutional. The following is the statute:

"All moneys paid by the owner to the principal contractor shall be and constitute a trust fund in the hands of such principal contractor, to the amount of all claims due from or owing by such principal contractor for work, labor and materials or to become due from or owing by such principal contractor for such work, labor and materials to persons entitled to a lien under this chapter against said owner and his property until all such claims have been paid; the using of such moneys by such principal contractor for any purpose other than the payment of such claims, until all such claims, except those which may be in dispute, have been paid, is hereby declared to be an embezzlement of said moneys punishable as provided by law in case of embezzlement."

The statute is assailed on the grounds that it violates the Fourteenth amendment to the constitution of the United States, in that it seeks to deprive a person of liberty and property without due process of law and denies to persons within the jurisdiction of the state the equal protection of the law. It is said that the statute is class legislation of the worst kind and deprives the contractor of his liberty without due process of law.

It is well settled that before the enactment of this amendment the first article of the declaration of rights in the constitution of the state was a substantially equivalent limitation

of legislative power, and that our legislature is bound to accord to all persons within its jurisdiction the equal protection of the laws, and to refrain from legislation which deprives any of them of life, liberty, or the pursuit of happiness. *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561; *Anderton v. Milwaukee,* 82 Wis. 279, 52 N. W. 95; *Janesville v. Carpenter, 77* Wis. 288, 303, 46 N. W. 128; *Hincks v. Milwaukee,* 46 Wis. 559, 566, 1 N. W. 230; *Durkee v. Janesville,* 28 Wis. 464, 469.

In most if not all the other state constitutions there is an equivalent declaration of rights, as there are those clauses giving the protection of "due process," or, as it is sometimes phrased, "the law of the land." Cooley, Const. Lim. (7th ed.) 500. It is also well settled that an act of the legislature is not necessarily the law of the land, nor does it necessarily afford the protection of "due process of law" guaranteed by our constitution. As was well said by an able judge:

"The words 'by the law of the land,' as used in the constitution, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory and turn this part of the constitution into mere nonsense. The people would be made to say to the two Houses, 'You shall be vested with the legislative power of the state, but no one shall be disfranchised, or deprived of any of the rights or privileges of a citizen, unless you pass a statute for that purpose.' In other words, 'You shall not do the wrong unless you choose to do it.'" Mr. Justice Bronson in *Taylor v. Porter,* 4 Hill (N. Y.) 140, 145.

Accordingly there have been innumerable decisions that when the legislature by statute arbitrarily and without good cause infringes the property rights or the liberty of any citizen within the protection of the constitution, such action is a denial of due process of law. In every case the problem to be solved is whether the statute is so arbitrary and capricious as to deprive the citizen of those fundamental rights guaranteed by the constitution.

This statute is earnestly assailed by counsel for plaintiff in error because it gives the lienholder a remedy in excess of that given to other creditors. It is argued that it is an act urged through the legislature by a powerful class, small in number, for its own benefit, with absolutely no advantages to the public at large, and giving to this class benefits which no other class enjoys.

But statutes do not in all cases deprive citizens of due process merely because they are limited to particular classes. In our complex civilization the legislature is competent to make classifications in order to promote the general welfare. Statutes in every state abound in provisions which give privileges to and impose restrictions upon those engaged in the various occupations. Such statutes do not deprive citizens of due process or the law of the land if there exists such reasonable ground for the classifications as to show that they are not arbitrary and personal, or unjustly discriminatory between different classes or individuals.

Among statutes of this class are those regulating the admission of physicians to practice their profession (*State ex rel. Kellogg v. Currens,* 111 Wis. 431, 87 N. W. 561); statutes imposing progressive rates of taxation upon those receiving different amounts of incomes (*Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164) or inheritances (*Black v. State,* 113 Wis. 205, 89 N. W. 522); statutes limiting the hours of labor (*Utah v. Holden,* 14 Utah, 71, 46 Pac. 756, 37 L. R. A. 103; *People v. Lochner,* 73 App. Div. 120, 76 N. Y. Supp. 396); those imposing restrictions on bankers, common carriers, and insurance companies and their modes of doing business (Cooley, Const. Lim. (7th ed.) p. 555); those subjecting telegraph companies to damages for mental anguish for failing to deliver messages promptly (*Nitka v. Western Union Tel. Co.* 149 Wis. 106, 135 N. W. 492); those regulating the sale of the lands of minors (*Kibby v. Chitwood's Adm'r,* 4 T. B. Mon. (Ky.) 91, 16 Am. Dec. 143; *Rice v. Parkman,* 16 Mass. 326); those prohibiting the pursuit of certain branches of business on

Sunday (*People ex rel. Hobach v. Sheriff,* 13 Misc. 587; *State v. Nichols,* 28 Wash. 628, 69 Pac. 372; *State v. Hogreiver,* 152 Ind. 652, 53 N. E. 921, 45 L. R. A. 504).

In discussing this subject of classification and the Fourteenth amendment in a decision of the United States supreme court it is said:

"A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley v. Natural C. G. Co.* 220 U. S. 61, 78, 31 Sup. Ct. 337.

Very familiar illustrations of this kind of legislation are the mechanics' lien statutes. When these were first enacted they were earnestly assailed because it was claimed they denied to the owners of property the equal protection of the law and discriminated among creditors, making certain classes of creditors preferred classes. Such statutes now exist in most if not all the states of the Union and are upheld except that in a few states some provisions of such statutes have been disapproved. Although these statutes make distinctions between different classes of creditors, they apply equally to all similarly situated, and in the consideration of the question whether due process has been denied this fact is of prime importance. If individuals or corporations are singled out for the imposition of burdens or as beneficiaries the statute is of course partial, unjust, and a denial of the equal protection of the law. Statutes for the creation and enforcement of mechanics' liens are upheld because they give a security to those whose labor and material have gone into the structure. They rest on claims of natural justice and in part on the maxim that the laborer is worthy of his hire.

The statute under consideration is made a part and parcel of the mechanics' lien statute. It relates to the same classes of individuals as the general statute, and no others. The class is a very large one. It is argued by plaintiff in error that the statute was enacted for the benefit of owners only. If this were true it is hardly correct to say, as claimed, that the class is very limited, since the statute applies equally to the owner of the humble cottage and to the owner of a palatial building.

It is easy to conceive of situations where compliance with the statute might be a protection to laborers, materialmen, and subcontractors as well as to the owner, as for example where after the contractor receives his compensation, and before payment to materialmen and others, the structure is burned or otherwise destroyed.

It is urged that when money is paid by the owner to the contractor the legal title passes; that the contractor may use it as he pleases, and that it is beyond the power of the legislature to impose upon it a trust; and that if such a statute is constitutional it would be but another step, and entirely competent for the legislature to make all debtors trustees for their creditors. We do not consider that any such conclusion logically follows.

When the owner pays the contractor for labor and material which has become part of a building or other structure there is often the express agreement that the money shall be devoted to its proper use, that is, to payment for the labor and materials of which both owner and contractor are presumed to have the benefit. If there is not such an agreement, express or implied, there is at least the reasonable expectation on the part of the owner that the money will not be diverted to other uses. There is, without the aid of any statute, a confidence, not amounting to a legal trust relation, but closely akin to it. There is very clearly a moral obligation, extending to both the owner and to those whose material or labor has entered into the structure, that the

Pauly v. Keebler, 175 Wis. 428.

compensation paid therefor by the owner should not be misapplied. In such a case there is something more than a mere contract relation between the owner and the contractor and between the contractor and the others referred to in this statute. When the contractor receives the money from the owner he owes a duty to the third persons whose labor and materials have enabled him to obtain that money. Before the statute was enacted the contractor could ignore this duty and spend the money for the use of his family or squander it as he saw fit without incurring any criminal liability.

The objection is urged that the statute makes acts criminal which were innocent before. In the sense that contractors could legally use for other purposes moneys intended by the owner to be paid to those who might be entitled to file liens, the act might be said to be innocent, but that such acts were free from moral delinquency we cannot admit. The legislature has seen fit to enact that the money thus received by the contractor shall be a trust fund and that its misappropriation shall be embezzlement. Embezzlement is a statutory, not a common-law, offense. Without some statute the large class of persons referred to in sec. 4418, as to embezzlement, would not be criminally liable for the misappropriation of funds. The legislature, mindful of the abuses and the injustice which often arose when contractors failed to perform this duty by neglecting to pay over to third persons moneys intrusted to them for that purpose, enacted that such moneys should be a trust fund and that their misappropriation should be embezzlement.

If it is within the legislative power to enact that moneys thus received from one class of persons for the benefit of another class are trust funds and are to be treated accordingly, there is clearly no valid objection to imposing adequate punishment for a violation of the trust. It would be no greater power than is exercised in many statutes in every state, the object of which is to prevent the misappropriation of funds.

It is also urged that the effect of the statute would be to deprive the plaintiff in error of due process of law because it purports to create a criminal offense without prescribing that the act prohibited must be with fraudulent intent.

It is true that in statutes imposing penalties for embezzlement the element of fraud or wrongful intent is generally expressed, and it is generally held that a criminal intent is a necessary ingredient of the offense.

"In embezzlement as in most crimes the essence of the offense or that which makes it criminal is the intent with which the act is done, which may be shown or conclusively presumed from the doing of the wrongful, fraudulent, and illegal acts which in their necessary results naturally produce loss to the person, natural or artificial, against whom the offense is committed. Where, however, the act or omission is of itself made to constitute the offense, knowingly and wilfully doing the act or omitting to perform the duty imposed by the law carries with it a conclusive presumption of criminal intent, and no other evidence of such intent is necessary." 15 Cyc. 491. See cases in note 13 A. L. R. 145.

It is the view of the majority of the court that since the statute in question declares certain specified acts to be embezzlement, the wrongful intent is necessarily implied and included in the statute, and therefore it is not essential to the validity of the statute that the intent be more specifically expressed. Hence a conviction under this statute cannot be had without proof beyond a reasonable doubt of an intent to defraud the same as proof thereof must be made in a prosecution under sec. 4418, Stats.

The writer expresses his own view only in saying that it is competent for the legislature to create the offense of embezzlement without any mention in the act of the wrongful or criminal intent. Of course the statutes in every state abound in sections punishing misdemeanors thus created.

But there are numerous statutes, long acquiesced in, creating crimes punishable in the penitentiary which omit all language expressive of fraudulent or wrongful intent. Our

statute as to polygamy (sec. 4577) is an example.  Under a
similar statute in Massachusetts, Mr. Chief Justice SHAW
rendered the opinion of the court sustaining the conviction
and said:

"If the statute has made it criminal to do any act under
particular circumstances, the party voluntarily doing that
act is chargeable with the criminal intent of doing it."
*Comm. v. Mash,* 7 Metc. (48 Mass.) 472, 474.  See *Comm.
v. Thompson,* 11 Allen (Mass.) 23; *Comm. v. Hayden,* 163
Mass. 453, 40 N. E. 846.

Secs. 4550*m* and 4539*m,* Stats., are illustrations of such
statutes.

One of the assignments of error is that the statute violates
sec. 16, art. I, of the constitution of the state, which pro-
vides that "No person shall be imprisoned for debt arising
out of or founded on a contract, expressed or implied."

It is argued that the relations between owner and con-
tractor and between him and those furnishing the labor or
material are purely contractual and that the statute is de-
signed to provide an additional and drastic remedy for the
performance of a mere contractual obligation.  It was held
in this state at an early date that this constitutional provision
did not apply in cases of tort committed; and that where
there was the conversion of the money of a client by an
attorney the wrongdoer was liable to all the consequences
of his act, including an execution against his body, not-
withstanding there may have been a contractual obliga-
tion.  *Cotton v. Sharpstein,* 14 Wis. 226; *Petition of Mowry,*
12 Wis. 52.

This court has also held that a statute authorizing impris-
onment, as for contempt, of a judgment debtor who disobeys
an order for the payment or delivery of money or property
made in a proceeding supplementary to execution is not a
violation of this clause of the constitution, even though the
judgment was for debt founded on a contract.  *In re Mil-
burn,* 59 Wis. 24, 17 N. W. 965.

For stronger reasons it should be held that the constitutional prohibition does not apply where the imprisonment is to punish crime. In such a case the imprisonment is not for any debt arising out of or founded on contract, express or implied, but on account of the criminal act. This is the rule which has been declared in prosecutions against bankers for receiving deposits with knowledge of insolvency (*Baker v. State,* 54 Wis. 368, 12 N. W. 12; *Meadowcroft v. People,* 163 Ill. 56, 45 N. E. 991; *Robertson v. People,* 20 Colo. 279, 38 Pac. 326), in prosecutions for defrauding hotel-keepers (*State v. Benson,* 28 Minn. 424, 10 N. W. 471; *State v. Engle,* 156 Ind. 339, 58 N. E. 698; *In re Milecke,* 52 Wash. 312, 100 Pac. 743); and for obtaining money under false pretenses, and other statutes which might be cited. Under statutes in many respects similar to the one under consideration the same rule has been declared. *State v. Hertzog,* 92 S. C. 14, 75 S. E. 374; *State v. Harris,* 134 Minn. 35, 158 N. W. 829.

Only three cases have been cited based upon statutes similar to the one here involved. In *Meyer v. Berlandi,* 39 Minn. 438, 40 N. W. 513, the statute discussed made the mere failure of a contractor, who had received pay from the owner, to pay the laborers and materialmen, a felony punishable by imprisonment in the penitentiary. There was no provision giving the laborer or materialman a lien on the property, or creation of a trust fund. In a very brief discussion by Mr. Justice MITCHELL the statute was held unconstitutional as imposing imprisonment for debt. Afterward a statute was enacted providing that if the contractor or subcontractor, with intent to defraud, should use the proceeds of any payment made to him on account of improvements by the owner of real estate, for any other purpose than the payment for labor, material, etc., while such labor or materials remained unpaid for, he would be guilty of larceny. This statute, like the one we are now considering, had reference to the mechanics' lien statutes, and was evidently passed

to prevent the abuses sought to be remedied by the one in question. The same objections were raised that are now urged, and it was held that the statute did not make an improper classification and did not call for imprisonment for debt, and its constitutionality was upheld.

In *State v. Hertzog,* 92 S. C. 14, 75 S. E. 374, a statute similar to the one here involved was enacted, but differed in that the statute, instead of creating a trust fund, gave to laborers and others a first lien on the money received by the contractor and imposed a penalty of fine or imprisonment upon the contractor for failure to pay the laborers and materialmen the money thus received. In this case it was held that the classification did not violate the constitution and that the statute did not impose imprisonment for debt.

In determining whether a statute is constitutional there are certain fundamental rules which must govern. Statutes are to be upheld by the courts unless unconstitutional beyond any reasonable doubt.

The legislature has all legislative powers not withheld or limited by the constitution of the state or the exercise of which is not prohibited by the federal constitution.

It is not the province of the courts to set aside statutes merely because they may be deemed unwise or because it may be feared that they will work inconvenience or hardship. Subject to the limitations imposed by the constitution the legislature has very broad powers in order to promote the public welfare, to create criminal offenses and impose punishment therefor. These are rules so elementary and long established that it is unnecessary to cite the many adjudicated cases on which they are based.

It is our conclusion that the objections of counsel for plaintiff in error are not well taken and that we are not justified in declaring the act unconstitutional.

The issues presented call for a decision on the meaning of the words, "persons entitled to a lien under this chapter." For plaintiff in error it is claimed that the words only refer

to those who have served notice of claim for lien. On the other hand, it is claimed by counsel for defendant in error that the clause refers to all persons "who do any work or furnish any material as embodied under the lien law, whether or not they attempt to perfect said lien, and they become entitled to the benefit of said section when the services are performed or the material is furnished; and it is optional with them whether they perfect the same by giving the necessary notice."

We do not entirely agree with the claim made by counsel for either party. As we construe the language of the statute, it refers to all persons who may be entitled to claim the benefit of the lien law, but it could hardly have been the legislative intent that the clause in question should refer to those who have lost their right to claim a lien by neglecting to file any notice within the statutory period. Nor do we think the legislature could have intended that the clause should be construed so strictly as to include only those who had actually filed the notice of lien at the time of the diversion of the trust fund. Such a construction would enable a contractor to obtain money from the owner and misappropriate it before the time for filing notices had expired or before the amount due laborers or materialmen had been ascertained, and thus the object of the statute would be defeated.

In the present case there is no testimony showing when the material and labor were furnished; therefore we cannot say from the record before us that any crime has been committed. We can only decide that upon the record as made the prisoner should have been discharged.

*By the Court.*—Order reversed, and cause remanded with direction to discharge the prisoner from this charge.

ESCHWEILER, J. I concur in the result reached in this case, namely, the reversal of the order and the discharge of the plaintiff in error. I cannot, however, agree with the

conclusion expressed in the majority opinion as to the constitutionality of sub. 3, sec. 3315, Stats. First, I think no conviction should in any event be allowed to stand under the statute as now worded, because it fails to require proof that such alleged misapplication of the funds received by the contractor from the owner is done with an unlawful intent, and the reference in that statute to the embezzlement statute is not sufficient to make this statute complete by such reference or by implication. Second, I think the statute in question attempts to do, indirectly at least if not directly, that which is prohibited by sec. 16, art. I, Const., which provides: "No person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied."

The obligation of the principal contractor towards the subcontractors and materialmen for services rendered or materials delivered is a contract obligation of the simplest and plainest kind. A statute, therefore, attempting to provide that the failure of a person for whom services had been rendered or materials delivered to pay for the same should be denominated a felony and punished by imprisonment would be a clear violation of the provision above quoted, or else the constitution in that regard is an idle waste of words.

By express agreement the principal contractor himself or his surety may lawfully undertake with an owner that such contractor and his surety will, for a valuable consideration, pay to said subcontractors or materialmen money to become due them on account of their employment by the contractors, and such subcontractors and materialmen may maintain an action upon such contract although it may have been entered into without any consideration moving from them, and even without their knowledge or consent at the time of the making thereof. *New York C. J. F. Co. v. Kenosha,* 167 Wis. 371, 376, 167 N. W. 451, and cases there cited; *Builders L. & S. Co. v. Chicago B. & S. Co.* 167 Wis. 167, 169, 166 N. W. 320, being an application to this particular kind of contracts of the general rule so often repeated in this court

since *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440. Many of the subsequent cases on that rule are cited in *Sedgwick v. Blanchard,* 164 Wis. 421, 424, 160 N. W. 267. These all recognize the relationship that is here presented between the principal contractor as promisor, the owner as promisee, and the subcontractors or materialmen as beneficiaries as being a contract obligation, nowhere designating it as a trust relationship. The statute now being upheld by the majority punishes a breach of such contract obligation by imprisonment in what seems to me to be a disregard of the letter and the spirit of the constitutional provision.

In *Bailey v. Alabama,* 219 U. S. 219, 31 Sup. Ct. 45, the United States supreme court declared unconstitutional the so-called peonage law of Alabama, which by the supreme court of that state had been declared constitutional as reported in 161 Ala. 75, 78, 49 South. 886. The federal court said (p. 238) as follows:

"We cannot escape the conclusion that, although the statute in terms is to punish fraud, still its natural and inevitable effect is to expose to conviction for crime those who simply fail or refuse to perform contracts for personal service in liquidation of a debt, and judging its purpose by its effect that it seeks in this way to provide the means of compulsion through which performance of such service may be secured."

Here as there the real purpose of the statute is to provide means of forcing payment of a debt by threatened confinement in the penitentiary of those who fail to perform that which is a simple and plain contract obligation.