HAMMER-JOHNSON SUPPLY, INC., Complainant-Appellee, v. T. I. CURTIS et ux., Defendants, Appellants.

—364 S.W. (2d) 496.

Eastern Section. June 25, 1962.

Certiorari Denied by Supreme Court December 7, 1962.

Wm. M. Dender, Athens, for appellants.

W. D. Hitch and Kenneth D. Higgins, Athens, for appellee.

McAMIS, P. J. Hammer-Johnson Supply, Incorporated, filed the bill in this case to enforce its mechanic's lien claim in the amount of $4728.09 upon a house and lot owned by defendants Curtis and wife for materials furnished their contractor, Ray Frye. Defendants have appealed from the Chancellor's action in disallowing as a credit on their job a $3300.00 payment made by Frye to complainant on February 20, 1961.

There is no dispute that Frye purchased from complainant for the Curtis job materials for which complainant was entitled to assert a lien in the amount claimed. Nor is there any dispute that defendants had completed paying Frye in full on February 18, 1961. It also appears that the disputed credit of $3300.00, on Frye's instruction, was first credited to the Curtis job but later transferred on his subsequent instructions to what is known in the record as Ridgeway No. 1 job on which Frye owed complainant an amount in excess of $3300.00. The principal question is whether this credit could legally be transferred in this manner by complainant without the consent of defendants.

The Chancellor in a carefully considered opinion concluded that the source of the $3300.00 first credited to

the Curtis job was a loan secured by Frye on the Ridgeway lot; that Frye had no right to apply the proceeds of the loan to the Curtis job but that he was duty bound to have it applied to complainant's lien claim against the Ridgeway job. The Chancellor accordingly held that defendants are without right to complain of the transfer of the credit to the job on which it should have been credited in the first instance.

There is no assignment directed to the finding of the Chancellor that the source of the $3300.00 in question was a loan obtained by Frye on the Ridgeway lot. The question is thus reduced to one of law: Could complainant lawfully transfer the credit in the manner shown? To respond to defendants' insistence that the credit could not be so transferred some further development of the facts is necessary.

The Citizen's Realty Company as the developer of Ridgeway Subdivision sold Frye the lot on which he constructed a house with materials partly furnished by complainant. Charges for these materials were carried on complainant's books against Frye as Ridgeway job No. 1. At the same time complainant was charging materials to Frye on the Curtis job. Frye owed complainant more than $3300.00 on each of these jobs when the defendants Curtis and wife on February 15, 1961, paid him $5000.00.

On February 18, 1961, Frye obtained from Mr. Boyd, an attorney of the Athens Bar who was acting as the closing agent for a loan company, a check in the amount of $6,080.00, that being the amount due Frye from the loan on the Ridgeway lot. The check was deposited by Frye in his general bank account. Two days later, Feb-

ruary 20, 1961, he tendered to complainant his check in the sum of $4131.00 and instructed its bookkeeper to apply $3300.00 on the Curtis job and the balance on the Holiday job, not here involved. He was given a receipt showing his account credited as directed.

Prior to the closing of the loan in Mr. Boyd's office on February 18, 1961, the Citizen's Realty Company as broker for Frye had sold the Ridgeway lot to Mr. and Mrs. Vaughn. Mr. Lay, one of its officers, testified that because his company was the developer of the Ridgeway Subdivision and had acted as sales agent for Frye, he felt responsible to the purchasers when he learned a few days after the loan was closed that the proceeds of the loan had not been used to pay complainant for materials it had furnished on the Ridgeway job. He then contacted Frye and induced him to go with him to complainant's place of business to discuss the matter with complainant's officers, Mr. Hammer and Mr. Johnson. As a result of that conference Frye, on February 27, 1961, directed complainant in writing to apply the full amount of his check of February 21, 1961, on the Ridgeway job. On the same date complainant's bookkeeper removed the $3300.00 credit from the Curtis job and applied it on its lien claim against the Ridgeway lot. Defendants were never notified that Frye's account on their job had been credited with $3300.00; nor were they consulted before the transfer was made.

■ Although defendants insist the transfer of the credit was the result of a fraudulent conspiracy and threats of prosecution made by Lay and complainant's officers, the Chancellor found to the contrary and we concur in that finding. Complainant had a lien against both jobs and, it would seem, had no motive or reason

to engage in a conspiracy or coerce Frye into making the transfer. Both Frye and Lay testified no threats were made. Certainly there is no proof that, if made, complainant knew of, or knowingly benefited from them.

■ We think the Chancellor was correct in holding defendants not entitled to credit for the $3300.00 payment in question.

T.C.A. sec. 64-1140 provides:

"Any contractor, sub-contractor, or other person who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by his order for, this specific improvement, while any amount for which he may be or become liable for such labor or materials remains unpaid, shall be guilty of a felony and punished accordingly."

Under this statute as well as upon equitable principles Frye received and held the proceeds of the loan in trust for the benefit of the loan company and the owners of the property, Mr. and Mrs. Vaughn. He could not apply any part of these funds to the discharge of complainant's lien on defendants' property without being guilty of a breach of trust and a violation of the penal statute enacted for their protection. It results that the credit, after the transfer, went as it should have gone in the first instance to the Ridgeway job and we are unable to see that defendants' rights have been in any way violated.

■ The authorities seem to disagree as to whether an antecedent debt is such consideration that a trust can not be enforced against a creditor who receives trust

funds in payment of personal indebtedness of the trustee. Ann. 12 A.L.R. 1051. That question is not involved here, however. The creditor and the debtor have agreed to rescind the application of trust funds to the payment of another obligation of the trustee. The parties now objecting were not parties to the transaction. They have no standing to complain when they are deprived of the benefit of the misapplication of trust funds.

Bain-Nicodemus v. Bethay, 40 Tenn.App. 487, 292 S.W. (2d) 234, supports the action of the Chancellor in denying defendants credit for the $3300.00 in question. In that case the furnisher, without instructions from the contractor, applied a credit of $750.00 on the contractor's oldest past due account thereby, to that extent, relieving the property of one Grusin of the furnisher's lien on his property. The contractor had received this fund from the defendants Batto and wife as advance payment for materials to be used on their property.

The Court found that the furnisher was aware that defendants were the source of the sum so paid and that with such knowledge it was in equity and good conscience bound to apply the credit to the contractor's account for materials furnished for use on defendant's property.

In that case, after noting that generally a credit is to be applied against a matured debt and that third parties have no right to compel a different application, the Court said:

''An exception to the foregoing rule may be found when a contractor owes the material man two accounts, makes payment to the material man with funds paid to such contractor and the material man has notice of the source of such fund, it is the duty of the material man

to give the credit so as to discharge or diminish the obligation chargeable against its source.''

It is true the creditor in that case had knowledge of the source of the fund when the payment was credited to the wrong account, while in this case such knowledge did not come to the creditor's attention until after the credit had been made. This, however, is a distinction without a difference upon the rights of the parties. Defendants were not aware that the credit had been made to the contractor's account on their job and, at least, in the absence of such knowledge, we are unable to see how they were in any way prejudiced by the action of the furnisher in making the proper credit as soon as it learned the source of the funds used by the contractor.

Weaver v. Ogle, 2 Tenn.App. 563, relied upon by defendants, is not to the contrary. There the sub-contractor was paid $500.00 which he properly credited to the job account but later attempted to transfer to the account of another job with which the defendant-owner had no connection. It was held that having once properly credited the payment it could not later be transferred to some other account. Here the initial credit was improper and the final credit proper—just the reverse of the situation dealt with in the Weaver case.

We conclude that, upon principle as well as upon authority, the Chancellor correctly determined the rights of the parties and the decree is in all respects affirmed at the cost of defendants.

Cooper, J., and Doughty, Special J., concur.