ABRAHAM DAUGHERTY, JR., Plaintiff in Error,

*v.*

THE STATE OF TENNESSEE, Defendant in Error.

393 S.W.2d 739.

(*Knoxville,* September Term, 1964.)

Opinion filed August 2, 1965.

Petition for Rehearing Denied September 14, 1965.

WILLIS JAYNES, Rutledge, for Abraham Daugherty, Jr.

GEORGE F. MCCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

Mr. Justice Dyer delivered the opinion of the Court.

The plaintiff in error, Abraham Daugherty, Jr., hereinafter referred to as the defendant, was convicted for misapplication of contract payments under T.C.A. sec. 64-1140 and was sentenced to a term of six months in the county jail.

The defendant entered into a written contract with Roy Vermillion, the prosecutor, on March 26, 1963, for the construction of a house for the consideration of $19,-000.00. By the terms of the contract the defendant, a building contractor, was to furnish the materials, supplies and labor. Defendant stopped construction on the house about November 15, 1963, without completing it after making a demand for $3,200.00 which demand was not granted. There was a difference of opinion as to the percentage of completion at this time with estimates ranging from 45% completion to 80% completion. When construction stopped Mr. Vermillion had paid the defendant $14,644.00 of the $19,000.00 contract price, lacking some $4,300.00 which was to be paid when the house was completed. Mr. Vermillion had paid the defendant an additional $820.00 for changes and alterations made in

the contract specifications, making a total paid of $15,-464.00. Liens were filed by materialmen and laborers who had worked on the house against both Roy Vermillion and the defendant in the amount of $7,401.14.

While building the house, the defendant expended $7,243.93 for materials and $8,364.21 for labor making a total expenditure for materials and labor of $15,608.14. Evidence was introduced that the defendant issued two checks to the Smith Hardware Store; one for $100.00 and the other for $75.00, marked "Materials, Vermillion Job" as payment on his account there. The only things shown to have been bought from Smith was a roto-tiller and a skill saw, which things would not ordinarily be considered materials for a house construction.

There was additional evidence that defendant issued two checks to Harris Supply Company; one for $300.00 and the other for $500.00, although no material was sent to the Vermillion job from Harris. Defendant explained by saying these materials were sent to another job by mistake. All of the checks issued by the defendant including the ones to Smith and Harris had notations on them indicating their uses, i. e. "Material Vermillion Job," but defendant was unable to testify at what time these notations were placed on the checks.

Defendant kept no records of the work done by his laborers that is, he didn't keep any time records nor did he have a set rate of pay. The laborers kept their own time according to the defendant and they were paid according to the value of the work they did. Defendant did keep cancelled checks and receipts although the receipt dates did not correspond to the date of actual payments. One of the laborers was defendant's brother and two of them were his cousins.

█ The statute the defendant was convicted under, T.C.A. sec. 64-1140, reads as follows:

Any contractor, subcontractor, or other person who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by his order for, this specific improvement, while any amount for which he may be or become liable for such labor or materials remains unpaid, shall be guilty of a felony and punished accordingly. 64-1140

This statute should be read in conjunction with T.C.A. sec. 64-1142 which states:

Such use of the proceeds mentioned in secs. 64-1139— 64-1141 for any purpose other than the payment of such unpaid amount shall be prima facie evidence of intent to defraud. 64-1142

█ Under this statute it is a criminal offense for a contractor to retain or appropriate to his own use payments made to him on a contract for realty improvements without paying the amounts due for labor and materials which may become a lien on the realty. A statute of this nature is intended to make the payments to the contractor trust funds for the payment of labor and materials, and to afford protection against contractors who receive money for construction or repair of buildings and divert it to other uses prior to payment of claims for labor, materials, or other charges in connection with the work on the buildings. The legislative purpose is to punish for a fraudulent conversion and not for failure to comply with a contractual obligation. The essential elements for the commission of the offense are the payment of the money

to a contractor by the owner for the construction of a building and a diversion of the money to other purposes by the contractor prior to the payment of all claims for which the money constitutes a trust fund. 29A C.J.S. Embezzlement sec. 19 (2) (1965).

It is assigned here as error the evidence preponderates against the verdict and in favor of the innocence of the accused. Under a long line of decisions we have held the verdict of the jury determines the credibility of the witnesses and resolves all conflicts in their testimony. In this case the jury verdict is against defendant and there is ample evidence to support such findings. This assignment of error is overruled.

The determinative issue, in this appeal, is the constitutionality of the statute in question. Generally, statutes which, in effect, make it an offense for a contractor to retain or appropriate to his own use payments made to him on a contract for realty improvements without paying amounts due for labor and materials which may become a lien on the realty have been sustained although some statutes of that nature, but having different phraseology, have been held to violate constitutional provisions. 29A C.J.S. Embezzlement sec. 3 (1965).

Several recent Tennessee cases have involved this statute although they have not ruled on the precise issues in point here. *State v. Overton,* 193 Tenn. 171, 245 S.W.2d 188 (1951), held that the statute in question was not unconstitutional on the grounds that it was ambiguous or meaningless. This is apparently the only Tennessee case that has ruled on the statute's constitutionality. The court pointed out that the offense very closely approaches embezzlement since there exists a confidential relation and the person who is charged by reason of such relation-

ship misappropriates or diverts the funds paid to him for a specific purpose.

As mentioned previously, several states, including California and South Dakota, with similar statutes, have held these statutes unconstitutional for various reasons. Two California cases, *People v. Holder*, 53 Cal.App. 45, 199 P. 832 (1921), and *American Surety Co. of New York v. Bank of Italy*, 63 Cal.App. 149, 218 P. 466, (1923), held similar statutes unconstitutional on the grounds of imprisonment for debt and interfering with the right to contract. These courts held that the legislature did not have the power to tell the contractor how to spend his own money nor could it provide that "a contractor who breaches his agreement to pay a certain class of debts with money that is his own shall, for that reason alone, be deemed guilty of a crime punishable with imprisonment." This California position was followed in South Dakota by *Commercial Nat. Bank of Sturgis et al. v. Smith et al.*, 60 S.D. 376, 244 N.W. 521 (1932).

By far the majority of courts that have ruled on this question in this country, however, have held the statutes constitutional. The Delaware case, *State v. Tabasso Homes*, 42 Del. 110, 28 A.2d 248 (1943), held:

While there is, subject to limitations, an inalienable right of parties to contract one with another, there is no inalienable right to embezzle or misappropriate money paid pursuant to a contract for the erection of a building, and it is this latter act that the statute attempts to prevent. The statute does not interfere with the right to contract, but contractors enter into their engagements with a knowledge of the statute, in the same manner as they do with reference to the

Mechanics Lien Statute, and numerous other statutory provisions. * * *

[T]he penalty of the statute is not invoked by any reason of the contract, but only in case of the misapplication of money, subsequently committed by one of the contractors. The penalty of the statute only arises if and when the offense is committed. 42 Del. 110, 28 A.2d 248.

The Delaware court interpreted their statute to mean money paid to a contractor, to be used in a building operation, should constitute a trust fund for those who by labor or materials have erected the building. The Tennessee case of *Hammer-Johnson Supply, Inc. v. Curtis,* 51 Tenn. App. 72, 364 S.W.2d 496 (1962), used similar language in saying a trust fund was set up.

The following states have held similar statutes to be constitutional. Georgia in *Johnson v. State,* 203 Ga. 147, 45 S.E.2d 616 (1947); Washington in *State v. Williams,* 133 Wash. 121, 233 P. 285 (1925); Virginia in *Overstreet v. Commonwealth,* 193 Va. 104, 67 S.E.2d 875 (1951); South Carolina in *State v. Hertzog,* 92 S.C. 14, 75 S.E. 374 (1912); Minnesota in *State v. Harris,* 134 Minn. 35, 158 N.W. 829 (1916); Wisconsin in *Pauly v. Keebler,* 175 Wis. 428, 185 N.W. 554 (1921).

Defendant first cites Article 1, Section 8 of the Tennessee Constitution which is the "law of the land" section. This is, of course, synonymous with the "due process of law" used in the Fifth Amendment and in the First Section of the Fourteenth Amendment to the Constitution of the United States. *Illinois Central R. Co. v. Crider,* 91 Tenn. 489, 19 S.W. 618 (1892). The right to contract is subject to curtailment, limitation, and destruc-

tion by the legislature, when such is done pursuant to "the law of the land." *State ex rel. Hamley v. Cummings,* 166 Tenn. 460, 63 S.W.2d 515 (1933). In *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177 (1911), it was held that this section of the constitution forbade that any mere individual be singled out for legislative action, but did not deny the right to the legislature to make proper classification for purposes of legislation. Such classification has to rest upon some natural or reasonable basis, having some substantial relation to the public welfare, and the same provisions must approximately apply in the same way to all the members of the class. T.C.A. sec. 64-1140 does not violate this section of the Constitution since it applies to all contractors. As was said in *Henley v. State,* 98 Tenn. 665, 41 S.W. 352 (1897):

> A statute is the "law of the land," which embraces all persons who are already or who may thereafter come into similar situations, conditions, and circumstances. If classifications are resorted to, they must be natural and reasonable, not arbitrary and capricious. 98 Tenn. 665, 41 S.W.352.

■ Defendant next cites Article 1, Section 9, which deals with the right of the accused in criminal prosecutions. Although not ·cited by name, defendant was apparently referring to the case of *Duncan Mayes v. State,* 50 Tenn. 430, 441 (1871), which held:

> It is not in the power of the legislature to so regulate the proof as to throw the burden on the accused, and thereby change the legal presumption that every man is innocent until the contrary appears from the proof. 50 Tenn. 441.

 The above statement is correct but we do not think it applicable to the case at bar. More nearly in point is the following:

The right of trial by an impartial jury is not impaired or abridged by a provision in a statute that proof of certain enumerated facts shall constitute prima facie evidence of fraudulent intent to commit the offense created by the statute. Legislation prescribing rules of evidence, and declaring what shall be evidence is practically unrestricted and will be upheld, if impartial and uniform, and not operating to preclude a party from exhibiting his rights. *State v. Yardley,* 95 Tenn. 546, 32 S.W. 481 (1895); *Henley v. State,* 98 Tenn. 665, 41 S.W. 352 (1897); *Diamond v. State,* 123 Tenn. 348, 131 S.W. 666 (1910); *Brinkley v. State,* 125 Tenn. 371, 143 S.W. 1120 (1911).

In every case the defendant is entitled to trial by an impartial jury, and to the benefits of a presumption of innocence, but that right and that presumption can no more preclude a presumption of guilty intent from sufficient proof adduced than they can preclude the introduction of proof altogether. *State v. Yardley,* supra.

 Defendant also cites Article 1, Section 11 which deals with ex post facto laws. This section of the constitution is not applicable to either the statute here at issue or the facts developed in this case.

We conclude the attack on the constitutionality of T.C.A. sec. 64-1140 is without merit. We have considered the other assignments of error set out on this appeal and find no merit in them.

Judgment affirmed.

## Petition to Rehear

The plaintiff in error, Abraham Daugherty, Jr., has filed a petition to rehear in this case. The matters raised, under this petition, were given consideration by the Court in preparing our original opinion. We have again examined our original opinion and do not agree such is in error. The petition to rehear is denied.