In re CEDAR CITY ELEVATOR & REFRIGERATION COMPANY, Debtor.

NOLAND COMPANY, Plaintiff,

v.

T. Larry EDMONDSON, Trustee, Defendant.

Bankruptcy No. 380–02148.
Adv. No. 381–0189.

United States Bankruptcy Court,
M. D. Tennessee.

Sept. 22, 1981.

Gary S. Rubenstein, Nashville, Tenn., for plaintiff.

T. Larry Edmondson, Nashville, Tenn., for defendant.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

The plaintiff in this adversary proceeding originally filed its complaint in the Chan-

cery Court for Davidson County, Tennessee, asserting a statutory lien against certain real property securing payment of $5,852 for materials and labor furnished in the erection of an improvement on that property. The complaint included as a defendant the debtor, a subcontractor which had contracted with the plaintiff for the material and labor in question. Pursuant to an agreed order entered in the Chancery Court the property owner paid the $5,852 to the Clerk and Master and the lien asserted by the plaintiff was transferred from the real property to the funds.

The trustee caused the proceeding to be removed to this court and in the answer filed in this court contends that the plaintiff failed to comply with the pertinent statutes regulating its lien rights and that as a consequence the funds being held by the Clerk and Master of the Chancery Court should be paid over to him for distribution among all of the unsecured creditors of the debtor, including the plaintiff.

The matter now is before the court on what appears to be a motion for partial summary judgment. In that motion the plaintiff asserts a right to the funds solely on the ground that they are impressed with a trust in its favor and that the trustee accordingly has no interest in same. The plaintiff relies upon the provisions of § 64–1140, et seq., of the Tennessee Code as creating such a trust and on the decision of the Sixth Circuit Court of Appeals in *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979) as requiring that it be recognized by this court in this proceeding.

The trustee has filed a motion in opposition to the summary judgment relief sought by the plaintiff, objecting to the imposition of a trust on the funds and urging that *Selby* is distinguishable.

The issue which thus has been presented is a significant one with which this court has wrestled on several occasions since the Sixth Circuit released its opinion in *Selby*.

In *Selby* the trustee of a bankrupt general contractor sought to recover as preferential transfers payments made by the property owner and contractor to subcontractors who had furnished labor and materials in improving certain real property. The court held that the effect of certain Michigan statutes was to impress such construction funds with a trust in favor of subcontractors and accordingly the general contractor's bankruptcy trustee, who represented the bankrupt's general unsecured creditors, had no interest in same. The Michigan statutes involved provided as follows:

570.151. *Building contract funds; status as a trust fund*

Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes. As amended P.A. 1966, No. 104, § 1, Eff. Oct. 1.

570.152. *Same; fraudulent detention or use by contractor or subcontractor, penalty*

Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part thereof, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

570.153. *Same; evidence of fraudulent detention or use*

Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

Mich.Comp.Laws Ann. §§ 570.151–570.153 (1967). The Sixth Circuit labeled these and similar statutory provisions which it recognized as having been enacted by a number of other states in the depression era of the 1930's as "state builders-trust-fund statutes."

The comparable Tennessee statutory provisions are codified in Title 64 of the Tennessee Code as follows:

64–1140. *Misapplication of contract payments.*—Any contractor, subcontractor, or other person who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by his order for, this specific improvement, while any amount for which he may be or become liable for such labor or materials remains unpaid, shall be guilty of a felony and punished accordingly.

64–1142. *Prima facie evidence of intent to defraud.*—Such use of the proceeds mentioned in §§ 64–1139—64–1141 for any purpose other than the payment of such unpaid amount shall be prima facie evidence of intent to defraud.

Section 64–1140 was enacted in 1931 as § 7944 of the Tennessee Code of 1932. Although the Tennessee General Assembly did not include an express reference to a trust relationship comparable to § 570.151 of the Michigan Code, the Tennessee Supreme Court has held that § 64–1140 has the same effect. In *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739, 741 (1965), that court sustained the constitutionality of the criminal sanctions imposed by § 64–1140 with the explanation that the statute was "intended to make the payments to the contractor trust funds for the payment of labor and materials" the misapplication of which constituted a conversion. In a decision more pertinent to the issue before this court since it was rendered in a civil case, the Tennessee Court of Appeals had previously held that as a result of this statutory provision a contractor "received and held the proceeds of the loan in trust for the benefit of the loan company and the owners of the property" and as a consequence could not apply those funds to the payment of materials delivered to another job site "without being guilty of a breach of trust." *Hammer-Johnson Supply, Inc. v. Curtis*, 51 Tenn.App. 72, 364 S.W.2d 496, 498 (1962) *cert. denied* (1962).

This court concluded in *T.B. Doggett Construction Co. v. Griffin*, BK No. 78–31507 (M.D.Tenn., Dec. 31, 1979) (B.J.) that the Tennessee statutes, as construed by the Tennessee courts up to that point in time, were indistinguishable from those of Michigan. The court accordingly deemed itself bound by *Selby* to hold that the Tennessee statutes imposed a similar trust on construction funds which must be recognized by this court. This decision was affirmed by the district court. No. 80–3078–NA–CV (M.D.Tenn., Feb. 28, 1980).

*Griffin* was a dischargeability proceeding[1] and this court subsequently has continued to recognize such trusts in other such proceedings, although with growing disenchantment.

In 1980 the Fifth Circuit Court of Appeals rendered what this court deemed to be a much better-reasoned approach to such state statutes. In *In re Angelle*, 610 F.2d 1335 (5th Cir. 1980), that court declined to give trust effect in a bankruptcy case to

---

1. Under § 17(a)(4) of the old Bankruptcy Act of 1898, as amended, former 11 U.S.C. § 35(a)(4), there was excepted from the discharge "debts ... created by ... fraud, embezzlement, misappropriation or defalcation while acting ... in any fiduciary capacity." This exception, with certain modifications, has been carried over in the Bankruptcy Reform Act of 1978. 11 U.S.C. § 523(a)(4) (1979).

statutory provisions similar to those of Tennessee and Michigan because they did not impose upon the statutory trustees specific duties normally required of traditional trustees, such as the requirement that funds for each project be segregated. Such specific duties are imposed, for example, by the New York builders-trust-fund statute. *See Besroi Construction Corp. v. Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977).

In the most recently reported circuit court opinion addressing the issue, the Ninth Circuit Court of Appeals has declined to give trust effect to comparable California statutes, *Runnion v. Pedrazzini*, 644 F.2d 756, 7 Bankr.Ct.Dec. 1167 (9th Cir. 1981), noting pertinently:

> Several recent cases have discussed whether section 17(a)(4) prevents the discharge of a general contractor's debt to the owner when the general contractor has diverted payments intended to go to the subcontractor. *See, e. g., Angelle v. Reid (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980), and cases cited therein. The question in all of these cases is whether a trust relationship is established in this situation. While the meaning of "fiduciary" in section 17(a)(4) is an issue of federal law, state law, within limits, will be recognized:
>
>> [T]he scope of the concept fiduciary under § 17a(4) is a question of federal law. The Supreme Court has repeatedly made clear that the concept is limited to technical trusts. . . .
>>
>> On the other hand, state law takes on importance in determining when a trust exists. The state may impose trust-like obligations on those entering into certain kinds of contracts, and these obligations may make a contracting party a trustee.
>
> *In re Angelle*, 610 F.2d at 1341. The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing. *Schlecht v. Thornton, (In re Thornton )* 544 F.2d 1005, 1007 (9th Cir.

1976). Thus, constructive or resulting trusts are excluded.

> With one exception, all of the courts that have dealt with statutes imposing criminal or other penalties for this kind of diversion of funds have refused to find a trust relationship. The rationale is that even if a trust is created by such a statute, the trust arises only upon the act of misappropriation and cannot be said to exist prior to the wrong and without reference to it. [Citations omitted].

In declining to give trust effect to the Tennessee fraudulent breach of trust statute in a dischargeability proceeding, this court cited *Angelle* with approval in *Borg-Warner Acceptance Corp. v. Binkley*, BK No. 79–30291 (M.D.Tenn., June 4, 1980) (B.J.).

In November of 1980 the same section of the Tennessee Court of Appeals that had rendered the key opinion in *Hammer-Johnson Supply, Inc. v. Curtis, supra*, addressed the very issue which is now before this court. In a contest between a bankrupt subcontractor's trustee and a sub-subcontractor, the court held that funds due the bankrupt were not impressed with a trust in favor of its subs as a result of § 64–1140 of the Tennessee Code. Without indicating any awareness of its prior decision, the court stated pertinently:

> While several states have statutes explicitly making funds paid to a contractor a trust for the benefit of laborers and materialmen, Tennessee only has T.C.A. 64–1140, which imposes criminal liability for misapplication of contract payments before debts to subcontractors have been satisfied. *See generally Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979). To prevent construction payments from becoming part of a bankrupt contractor's property in the absence of a state builders trust fund statute, courts generally will set up either an equitable lien or a constructive trust for subcontractors who possess valid mechanics liens or inchoate liens that are still capable of becoming valid within the prescribed state statutory time limits and requirements. *See* 9

Am.Jur.2d Bankruptcy § 1029 (1963); 8A C.J.S. Bankruptcy § 243(3) (1962); *Cutler-Hammer v. Wayne*, 101 F.2d 823 (5th Cir. 1939); *In re Crow*, 3 Collier Bankruptcy Cases 164 (E.D.Tenn.1974). · Constructive trusts will also be established to ensure that direct payments from the landowner to the materialmen or laborers either pursuant to a prior agreement or in exchange for an agreement not to file a lien are not held to be voidable preferences under § 60 of the Bankruptcy Act. [Citations omitted.] Since this court is unable to find authority establishing a construction fund trust in the absence of an explicit state builders trust fund statute, a prior agreement between the parties for direct payment to the subcontractor, or the possession of a valid or inchoate mechanics lien by the subcontractor, we hold that Sequatchie Concrete is not entitled to have the funds owed to Tate [the bankrupt] held in trust for it.

*Sequatchie Concrete Service, Inc. v. Cutter Laboratories*, 616 S.W.2d 162 (Tenn.App. 1980). On April 27th of this year the Tennessee Supreme Court denied the sub-sub-contractor's application for permission to appeal.

The effect of the decision in *Sequatchie Concrete Service* is to leave the status of the law in Tennessee relative to construction funds—although not as certain as this court would like—sufficiently different from that in Michigan to warrant this court distinguishing *Selby.* There now appear to be three significant state-court decisions in each state construing the pertinent statutory provisions. The earliest opinion was rendered by the Michigan Supreme Court in 1935 with that court concluding that the Michigan statutes did no more than create a particular statutory crime and did not affect the civil rights and obligations between owners, contractors, subcontractors and materialmen. *Club Holding Co. v. Flint Citizens' Loan & Investment Co.*, 272 Mich. 66, 261 N.W. 133 (1935). The next opinion was by the Tennessee Court of Appeals in *Hammer-Johnson Supply Co., Inc. v. Curtis, supra,* in which that court held that the Tennessee statutes did affect the civil rights

and the relationships between owners and contractors. This decision was followed by that of the Tennessee Supreme Court in the criminal case of *Dougherty v. State, supra.* One year after *Dougherty*, in a case involving the interest of a contractor's bankruptcy trustee in such funds, the Michigan Supreme Court reversed *Club Holding* and held that the Michigan statutes did impress construction funds with a trust in favor of subcontractors to the exclusion of such a trustee. *B.F. Farnell Co. v. Monahan*, 377 Mich. 552, 141 N.W.2d 58 (1966). Ten years later the Michigan Supreme Court reaffirmed the decision in *Monahan* in the case of *National Bank of Detroit v. Eames & Brown*, 396 Mich. 611, 242 N.W.2d 412 (1976) even though the court had considerable difficulty reconciling the trust with pertinent provisions of the Uniform Commercial Code in a contest between a creditor with a perfected security interest in a contractor's receivables and a subcontractor beneficiary of the trust. The last decision is that of the Tennessee Court of Appeals in *Sequatchie Concrete Service.*

The major difference in the status of the law in the two states is that the highest court in Michigan twice has held unequivocally that the effect of that state's statutes is to impress construction funds with a traditional trust. The Tennessee Supreme Court has only touched on the issue in a criminal proceeding and, although that court did indicate that the trust relationship was the predicate for the imposition of criminal sanctions, its decision is as consistent with a trust ex maleficio, which arises as a result of wrongdoing, as with a traditional trust, which exists prior to and independent of any wrongdoing. Although the Tennessee Supreme Court was given an opportunity to review the *Sequatchie Concrete Service* decision, it declined to do so. Apparently the construction fund trust issue was not the principal issue raised on appeal and was mentioned only in passing in one of the briefs filed with that court. The decision to deny the appeal does not appear to constitute any indication of approval of the result reached by the lower

court. *See,* Sobieski, "A Survey of Civil Procedure in Tennessee—1977," 46 Tenn.L. Rev. 271, 387 (1979). Thus it is possible that Tennessee's highest court at some future date might reach a different result than the Court of Appeals in *Sequatchie Concrete Service.* In any event, the same section of the Court of Appeals which rendered the opinion in *Hammer-Johnson Supply Company v. Curtis, supra,* one which this court deemed to be critical in *Griffin,* apparently has reversed it, although not expressly so.

It appears to this court that the result in *Sequatchie Concrete Service* is the appropriate one under either the Michigan or Tennessee statutes which essentially are indistinguishable. Section 570.151 of the Michigan Code does not expressly create a trust but merely recites that construction funds "shall be *considered* by this Act to be a trust fund" and contractors "shall be *considered* the trustee." [Emphasis added.] As the Tennessee Supreme Court noted in *Daugherty v. State, supra,* such statutes predicate the imposition of criminal sanctions—not on breach of a contractual obligation—but upon the conversion of trust funds. Such statutes thus create not true traditional trusts but merely trusts ex maleficio as the Michigan Supreme Court correctly concluded in its initial opinion in *Club Holding Co. v. Flint Citizens' Loan & Investment Co., supra.* The opinion of the Michigan Supreme Court in *B.F. Farnell Co. v. Monahan, supra,* is not well-reasoned and the problems which flow from treating such funds as being impressed with such a trust without clear directions to contractors on how they are to be handled were manifested in that court's subsequent opinion in *National Bank of Detroit v. Eames & Brown, supra.* Thus, this court would hope that the Tennessee courts would not reverse *Sequatchie Concrete Service* on the basis of Tennessee's present statutory provisions.

The contractors of this state are entitled to specific legislative guidelines as to how they are to handle the funds which they receive. It is unrealistic to apply to the typical contractor, who has an interest in such funds, the same standards applicable to a disinterested traditional trustee. Statutes such as those in Michigan and Tennessee should not be given the effect of creating traditional trusts unless they specifically impose upon the contractor trustees explicit trustee-like duties.

In several opinions rendered since the Tennessee Supreme Court denied the application to appeal in *Sequatchie Concrete Service,* Judge Clive W. Bare of the eastern district has held that § 64–1140 no longer should be given the effect of impressing construction funds with a trust recognizable in bankruptcy proceedings. *E. g., Kannon v. Blalock,* Adv.Proc. No. 3–81–0100 (Bankr. Ct.E.D.Tenn., August 21, 1981); *Witt Building Material Co. v. Booker,* Adv.Proc. No. 3–80–0630 (Bankr.Ct.E.D.Tenn., July 15, 1981). Both of these opinions contain excellent discussions of the various types of trusts created under state law, ranging from traditional express trusts to trusts ex maleficio, and the treatment they are accorded in bankruptcy cases. Judge Bare concludes that in the aftermath of *Sequatchie Concrete Service* whatever trust may be created by section 64–1140 is not the traditional trust recognizable in bankruptcy proceedings.

This court concurs with Judge Bare's analysis. The effect of the recent decision by the Tennessee Court of Appeals in *Sequatchie Concrete Service* is to establish that the trust created by §§ 64–1140, *et seq.,* of the Tennessee Code is a trust ex maleficio and not a traditional trust. This court accordingly declines to give effect to that trust in this proceeding.[2] *Griffin* and

---

2. The plaintiff also has directed the court's attention to the following statutory provisions but they are not applicable to the facts of this proceeding and would not appear to alter the result in any event:

64–1148. *Portion of contract price held in escrow.*—Whenever, in any contract for the improvement of real property a certain amount or percentage of the contract price is held back by the owner or contractor, that retained amount shall be deposited in a separate escrow account with a third party giving proper security for the performance of their obligation.

those decisions following *Griffin* are reversed.

An appropriate order will be entered denying the plaintiff's summary judgment motion and setting this matter for hearing on the validity of the plaintiff's lien.

64–1149. *Effect of placing funds in escrow.*—As of the time of the deposit of the retained funds, they shall become the sole and separate property of the contractor, subcontractor, materialman, or laborer to whom they are owed.
64–1150. *Release of escrow funds.*—Upon satisfactory completion of the contract, to be

evidenced by a written release by the owner or contractor, all funds accumulated in the escrow account together with any interest thereon shall be paid immediately to the contractor, subcontractor, materialman or laborer to whom it is owed.