FRANK E. REED v. J. F. FULLER, et al.

Eastern Section. February 20, 1932.

Petition for Certiorari denied by Supreme Court, July 23, 1932.

Murry, Dance & Grubb, of Chattanooga, for appellant.

Strang & Fletcher, Cantrell, Meacham, & Moon, and J. L. Foust, all of Chattanooga, for appellees.

PORTRUM, J.   This is a discretionary appeal from the Chancery Court, upon a designated record, to review the decision of the Chancellor upon one question.   The Chancellor denied to the appellant a mechanic's lien upon two houses, which the appellant had constructed upon two lots owned by the defendant, under a contract for a stipulated price of $1875 each.   The appellant seeks in this court to have his lien declared upon this property.   The appellant, Frank E. Reed, was the contractor and he filed the bill more than sixty days after the completion of the contract to have declared and enforced a mechanic's lien against the property; he alleged that others who had furnished material were entitled to a mechanic's lien also, and he filed the bill as a general lienors' bill, making the owner, J. F. Fuller, and the members of the firm of G. O. Crouch & Son, a claimant of a lien, parties defendant.   He prayed that all others asserting claims intervene in this proceeding by petition and assert their claims, and that an injunction issue injoining all parties from prosecuting claims in other suits; he prayed also for an attachment, and for general relief.

The injunction was issued, and an attachment, under a fiat of the court, was issued and levied upon the two houses and lots described in the bill. Several claimants filed petitions asserting mechanic's liens, and prayed for an attachment against the property. Certain creditors of the owner, who had debts secured by trust deeds resting upon the respective property, intervened by petition and asserted their liens and sought to have them declared superior liens.

The bill was filed April 24, 1928, and described the two lots as follows:

"Lots 522 and 525 of Allen's Addition No. 1 to East Highland,"

but as a matter of fact this was an inaccurate description, and described two lots upon which the parties had no claim; the correct description is: "Lots 522 and 523 of Allen's Addition No. 2 in East Highland." The first description is defective in two particulars, the lots were placed in the wrong addition, and the number of one of the lots is given as "525," when the correct number is "523."

The attachment was levied upon the two lots described in the original bill, and therefore did not fasten upon the two lots upon which the two houses were built.

On the first day of June, 1928, a creditor intervened by petition asserting a mechanic's lien on lot 522 of Allen's Addition No. 2, and prayed for an attachment to be issued and levied upon this lot. An attachment was issued and levied upon lot 522. Upon this day, June 1st, the complainant, Reed, discovered the erroneous description contained in his bill, and applied to the Court for an amendment correcting the description. This amendment was granted and the bill amended so as to correctly describe the lots on which the houses were built. But the amendment contained no prayer for another attachment to be levied upon the property as correctly described, and none was granted, issued or levied. Later in the proceeding another intervening petitioner sought a lien upon lot 523, Allen's Addition No. 2, and the Chancellor held that this attachment was effectual, and so both lots were brought into court, and in this cause, by petitioners, in the event the amended original bill, and the attachment issued prior to the amendment, was ineffectual.

The appellant, Reed, insists that the amendment speaks as of the date of the filing of the bill, and that the misdescription in the levy on the attachment is controlled by the description in the bill, and therefore the property was legally attached, citing Crumley v. Reicon Co., 4 App. Cas., 659. (Had the attachment been levied upon the property upon which the lien rested, and the levy incorrectly describes it, while the bill correctly describes it, then apparently this authority is in point, but the levy was not made upon the property upon which the lien rested, but upon other property, and the officer made no error in his description of his levy).

Reed advanced other positions, and the Chancellor disposed of his claims as follows:

"In his bill filed April 24, 1928, Reed described the lots upon which he claimed a lien as follows: 'Lots 522 and 523 of Allen's Addition No. 1 to East Highland,' and an attachment following said description was prayed, issued and levied. But these were not the lots upon which he erected the houses at all. The lots upon which he erected the houses were as follows: 'Lots 522 and 523 of Allen's Addition No. 2 to East Highland.' On June 1, 1928, Reed was allowed to amend the bill so as to correctly describe the lots upon which he claimed a lien, as last above stated, but no attachment of these lots was prayed or granted, issued or levied.

"Of course it goes without saying that attachment of the property upon which a mechanic's lien is asserted is absolutely essential to the preservation and enforcement of the lien. Solicitor for Reed has made an earnest and able argument that the amendment of the bill was sufficient to cure the failure to have an attachment levied upon the right property and make the attachment of the wrong property good, and he cites the following cases, viz: Crumley v. Reicon Co., 4 App. Cas., 659; Brown v. Jacobi, 10 Heis., 353; Stout v. Swaney, 3 Tenn. Ch., 93, and Nicely v. Nicely, 8 Tenn. App., 134. None of these cases support the contention. In the first four of them there was an attachment of the property upon which the lien was claimed. The last case cited, the lien claimant filed his petition in a proceeding to wind up an insolvent decedent estate, in which the property was already impounded, and it was held that an actual attachment was not necessary in such case, but that case does not resemble Reed's case.

"Reed has lost any lien he had, and the only relief he is entitled to is the accounting heretofore ordered."

We likewise do not think the cases relied upon are in point; we think this question is to be decided upon a construction of Shannon's Code, Sections 5306, and especially 5307. We think there are but two reported cases construing this latter section, and these cases, while instructive, are not determinative of the questions made in this case. Before discussing them we will set out the two sections of the Code mentioned:

"5306. The mechanic's lien is enforced by attachment at law or in equity sued out, upon bill or petition under oath setting forth the facts, and proceeded with under the provision of the preceding chapter; or it may be enforced by judgment and execution at law, to be levied on the property on which the lien is."

"5307. Where there are several persons entitled to the lien

given by this article, all, or any number of them, may join in one attachment suit in equity, or, upon the filing of one bill, the rest may come in by petition, without suing out a new attachment, by giving bond and security, as if the attachment had been taken out by the petitioner.''

Now, in the case of Ragon v. Howard, 97 Tenn., 334, the court in construing this last section held that a petitioner who did not make anyone a party to the petition, and who had not given the bond required within the year, but had given the bond after the expiration of a year and had an order entered nunc pro tunc had not perfected his lien. Neither of these objections is available in the instant case.

Mr. Justice Neil discussed and quoted these sections of the Code in the case of Lumber Co. v. Loeb, 110 Tenn., 251, 75 S. W., 1043, and laid down a uniform method for the enforcement of mechanic's lien. However, he does not touch upon the identical question raised in this suit. He states: ''This proceeding may be by bill or petition setting forth the facts, and the facts to be set forth are those entitling him, under the statute, to the lien.'' In this case we have the bill setting forth the facts and meeting the requirements. We also have the bonds required under Section 5307. And we have a petition filed in the cause which correctly describes lot 522, a prayer, a grant, and a levy of attachment upon this property. Now, was it absolutely necessary, under a proper construction of this section, that Reed have issued and levied an attachment upon the property? The attachment in a case of this kind is not leading process, and the bill may be maintained, as it was, and a judgment rendered personally against the owner. Dollman v. Collier, 92 Tenn., 658, 22 S. W., 741. It cannot be used as the leading process to bring the defendant before the court. It is auxiliary in its nature and collateral to the original or leading process by which a suit is commenced and may be incorporated with the leading process, though not constituting leading process. Warner v. Yates, 118 Tenn., 548, 102 S. W., 92. Since the attachment was not leading process, and the complainant could maintain his bill for certain purposes independent of the attachment lien, we see no reason why he could not within a year have sued out and have levied an attachment to bring the property into court. He did not do this, but another party in the same cause did, and the Court took the res within its jurisdiction, and control. The action then became one quasi in rem. In action quasi in rem it is not the usual practice to require the levy of more than one attachment upon the res, but it is necessary for the parties to otherwise perfect their attachments. However, the usual practice is not controlling in this case for Shannon's Code, Section 5307 defines the practice. It is, a party ''may come in by petition, without suing out a new attachment, by giving bond and security, as if the attachment had been taken out by the petitioner.''

If we should treat the petition of the Lookout Planing Mill as the original bill, and Reed's original bill as the petition in the cause, then Reed would have qualified under this section of the Code and be entitled to have his lien declared. His bill contains all the essentials of a petition, and his bond and security is on file. If the Planing Mill's attachment and levy were held sufficient under this section to perfect the lien of other petitioners who did not have granted and levied an attachment, why should not the original complainant who stands in the same position, with the exception of the order of time, be denied the same relief? We think the bill and petition are so kindred in kind that it is immaterial under which the property is brought into the jurisdiction and control of the court. That when the property is brought under the control of the court by an attachment, then the parties whose pleadings are in form, and who had given bond and security, are entitled to have their liens declared, provided, of course, the pleadings and bonds or security were filed within the year.

We think this is the reasonable construction of this Section, especially since "it is the policy of our law to protect and enforce the lien of mechanics or furnishers, and not to allow them to be defeated by any technical niceties of construction." The Chancellor overlooked, or did not refer to this section of the Code. His holding in reference to the complainant's lien on lot 522 is reversed.

As to lot 523, another petitioner levied an attachment and brought it into the cause within time. The Chancellor says:

"Crouch & Son. In their original petition they misdescribed the property just as the complainant did, and they claim no lien at all, but by an amendment, in time, which was allowed, they correctly described the property and claimed a lien upon both lots. An attachment was issued and levied upon both lots, but there was no fiat or order of the court for the issuance of an attachment. Said attachment was therefore issued without authority. If proper objection upon this ground had been interposed, it would have had to be sustained, but none was interposed and the attachment must be held to be effective. Brown v. Jacobi, 10 Heis., 355."

This holding is not questioned in this court. We express no doubt as to its soundness. We look to the record and find an attachment, issued in time, upon lot 523, and we must give this attachment the same effect as we gave the attachment of the Planing Company on lot 522. Therefore both lots were before the court and complainant, Reed, was entitled to his lien against each.

Reed was the contractor, and it is insisted by the mortgagees that they advanced money to pay claims for which he was primarily liable, and if his mechanic's lien is superior to their trust deed, nevertheless Reed should account to them for the proceeds expended for his ben-

efit. The Chancellor ordered a reference, which is not yet executed, and these defenses can be properly advanced later. The holding of this Court will make necessary perhaps the readjustment of the equities of parties in the lower court. The adjudication here is confined to the issues presented in the appellant's assignment of errors.

The cost of the appeal will be taxed out of the funds derived from the sale of this property. The cost in the lower court will abide until further adjudication of that court. The cost of the writ of error sued out for the appellant will be paid by the appellant.

Snodgrass and Thompson, JJ., concur.