SEQUATCHIE CONCRETE SERVICE, INC.

v.

CUTTER LABORATORIES.

R. S. NOONAN, INC.

v.

SEQUATCHIE CONCRETE SERVICE, INC., et al.

Court of Appeals of Tennessee, Eastern Section.

Nov. 21, 1980.

Application for Permission to Appeal Denied by Supreme Court April 27, 1981.

Edwin Z. Kelly, Jr. and J. Harvey Cameron of Kelly, Leiderman, Cameron, Kelly & Graham, Jasper, for appellant.

R. Allan Edgar of Miller & Martin, Chattanooga, for Cutter Laboratories.

Patrick C. Taintor of Tanner, Jahn, Atchley, Bridges & Jahn, Chattanooga, for Trustee.

## OPINION

PARROTT, Presiding Judge.

In these consolidated cases appellant, Sequatchie Concrete Service, Inc., appeals the chancellor's granting to both appellees sum-

mary judgment that denied enforcement of a materialman's lien when the original lien claim contained an erroneous property description.

The facts were stipulated. Sequatchie Concrete Services, Inc., hereinafter referred to as "Sequatchie Concrete," entered into a parol contract with Edwin Tate, d/b/a Tate Masonry Company, to supply concrete products for use in construction work at the Hamilton County plant facilities of Cutter Laboratories, hereinafter referred to as "Cutter Labs." Tate was a subcontractor under a contract for the plant improvements between R. S. Noonan, Inc., general contractor, and Cutter Labs. Pursuant to the parol contract, as of March 31, 1979, Sequatchie Concrete had furnished Tate Masonry $12,414.99 worth of masonry products which were incorporated into Cutter Labs' improvements. Tate signed Sequatchie Concrete's invoices which specified service charges at the rate of 1½ percent per month. Nothing has been paid on the Tate account and Richard Jahn has been appointed trustee pursuant to Edwin Tate's adjudication of bankruptcy on June 8, 1979.

On April 18, 1979, within 90 days of the time Sequatchie Concrete furnished the last materials to Tate for incorporation into Cutter Labs' improvements, Sequatchie Concrete notified Cutter Labs by letter that it was claiming a materialman's lien and enclosed a copy of a notice of lien, which was also filed at the register's office that day. Cutter Labs owns three adjacent lots and the notice of lien contained an erroneous property description of a parking lot area instead of a description of the lot where the plant improvements were made. Sequatchie Concrete filed an action on June 25, 1979, seeking enforcement of its lien against Cutter Labs and requesting attachment be levied on the same property that had been mistakenly described in the notice of lien. On August 8, 1979, approximately 110 days after the notice of lien was given, Sequatchie Concrete filed an amended complaint correctly describing the Cutter Labs property where the improvements actually were made and another attachment was issued.

Following Tate's adjudication of bankruptcy, because R. S. Noonan, the general contractor with Cutter Labs, owed Tate $8,348.19, Noonan filed a complaint of interpleader asking the court to make an adjudication whether he should pay the sum to R. P. Jahn, Tate's trustee in bankruptcy, or to Sequatchie Concrete. Noonan is obligated by its contract with Cutter Labs to hold Cutter Labs harmless from any mechanics' and materialmen's liens against their real property and seeks to avoid double payment of the sum.

The chancellor, in granting summary judgment for the appellees, specifically found that the lien notice and attachment did not describe Cutter Labs' improved property and that no attachment of the improved property was made within 90 days following the notice of lien. Therefore, the court held that Sequatchie Concrete had failed to perfect a lien upon the improved property within the legally prescribed time. Furthermore, the chancellor ruled that as to the funds R. S. Noonan owed Tate there was no trust existing in favor of Sequatchie Concrete and those funds should pass to Tate's trustee in bankruptcy.

■ Appellant's first contention is that it properly perfected a valid materialman's lien including Cutter Labs' improved property that should be enforced by the court. When the lien dispute is limited to between the owner and supplier, written notice alone to the owner is sufficient to perfect the lien as between those two parties. Tennessee law requires only a simple form of notice to initially alert the property owner as to the supplier's claim. See *Reeves v. Henderson & Co.*, 90 Tenn. 521, 18 S.W. 242 (1891). Failure to properly register the notice with a correct description of the improved property as required under T.C.A. § 64–1117 only affects the furnisher's rights as opposed to subsequent purchasers or lienors. *Walker Supply Company, Inc. v. Corinth Community Development, Inc.*, 509 S.W.2d 514 (Tenn.App.1974). Although Sequatchie Concrete's letter of notice to Cutter Labs contained the erroneous property descrip-

tion of the parking lot, its explanation of the construction contract under which the lien was being claimed was sufficient to alert the property owners that the improved parcel of land was actually the property upon which the furnisher sought to impress the lien.

■ However, enforcement of a mechanic's or materialman's lien is a statutory right and strict compliance with T.C.A. § 64–1101 et seq. is required. *General Electric Supply v. Arlen Realty & Development Corporation,* 546 S.W.2d 210 (Tenn.1977); *Eatherly Construction Company v. DeBoer Construction, Inc.,* 543 S.W.2d 333 (Tenn. 1976), and cases cited therein. T.C.A. § 64–1126 requires that liens be enforced by attachment only; such attachment to issue "upon petition . . . setting forth the facts, *describing the property,* and making the necessary parties defendant. . . ." (Emphasis added.) Although T.C.A. § 64–1126 contains no reference as to time limitations for making attachment, T.C.A. § 64–1115 prescribes the time for filing suit by reference to the lien continuing "until the final termination of any suit for enforcement brought within . . ." 90 days of the notice of lien. The Tennessee Supreme Court recently held that:

> We are of the opinion that when a lien claimant has timely filed his complaint with the clerk, praying for writ of attachment, and when that writ has actually been issued by the clerk of the sheriff within the time period prescribed in T.C.A. § 64–1115, then the suit has been "brought" within the meaning of the statute . . . . (*General Electric Supply v. Arlen Realty & Development Corp.* supra at 213–14)

In the instant case a lawsuit was initiated and attachment of the wrong property was levied within 90 days of the notice of lien. However, not until after 110 days from the notice of lien was the error in property description corrected and Cutter Labs' improved property properly attached, which does not comply with the statutory requirements.

■ Often courts hold that partially inaccurate property descriptions are sufficient to preserve a lien, particularly when the only parties are the supplier or laborer and the owner. However we agree with the *general rule that where there is a positive or unambiguous description of the wrong piece of property and not of property which the lien may properly attach, the description is obviously insufficient to create or preserve a lien.* 53 Am.Jur.2d *Mechanics' Liens* § 229 (1970), 57 C.J.S. *Mechanics' Liens* § 161(2) (1948), Annot., 52 A.L.R.2d 37 (1957).

■ Sequatchie Concrete contends that under T.R.C.P. 15.03 the amended complaint filed August 8, 1979, describing and attaching the correct improved property relates back to the time the suit was originally filed, which was within the required 90 days of notice of lien. T.C.A. § 64–1119 only specifically provides that "any claim of lien . . . may be amended at any time during the period allowed for filing such claim. . . ." By implication necessary amendments made after the time limitation set in T.C.A. § 64–1115 would be ineffective. Correcting an improper description of the property against which the lien is asserted after the time for filing has passed would amount to making an entirely new claim of lien. *Brunecz v. DiLeo,* 263 Md. 481, 283 A.2d 606 (1971). The general rule is that "failure to describe particularly the property or the building or improvement on which the lien is claimed, or a mistake in the description of the property, may be corrected by amendment at least *as long as the amended description keeps within the bounds included by the original.*" 57 C.J.S. *Mechanics' Liens* § 306b (emphasis added). *Knoxville Structural Steel Company v. Jones,* 46 Tenn.App. 518, 330 S.W.2d 559 (1959) (overruled in part by *General Electric Company v. Arlen Realty & Development Corp. supra*) reasoned that by inference *Reed v. Fuller,* 16 Tenn.App. 47, 65 S.W.2d 841 (1932), recognized the necessity of having the correct property attached within the statutory period and that subsequent amendment of an erroneous property description would be ineffective to preserve

a claim of lien. *See* annot. 81 A.L.R. 360 (1931).

Appellant's second contention is that the funds R. S. Noonan owes Tate should be held in trust for Sequatchie Concrete and applied as a setoff against the amount Tate owes it for materials supplied in this construction project. We do not agree. For support appellant relies on Bankruptcy Judge Clive W. Bare's opinion in In re: McCamy Electric Service, Inc., No. BK–2–78–34 (1979), in which a subcontractor was given preference over bankrupt's trustee to funds received by the bankrupt contractor for performance of a construction project for the state. However, that case involved an agreed upon joint adventure between the subcontractor and the bankrupt, in which both split any profits after expenses made from the project, and the state had been instructed to make its checks payable to both parties.

■ While several states have statutes explicitly making funds paid to a contractor a trust for the benefit of laborers and materialmen, Tennessee only has T.C.A. 64–1140, which imposes criminal liability for misapplication of contract payments before debts to subcontractors have been satisfied. *See generally Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979). To prevent construction payments from becoming part of a bankrupt contractor's property in the absence of a state builders trust fund statute, courts generally will set up either an equitable lien or a constructive trust for subcontractors who possess valid mechanics liens or inchoate liens that are still capable of becoming valid within the prescribed state statutory time limits and requirements. *See* 9 Am.Jur.2d Bankruptcy § 1029 (1963);

8A C.J.S. Bankruptcy § 243(3) (1962); *Cutler-Hammer v. Wayne*, 101 F.2d 823 (5th Cir. 1939); In re Crowe, 3 Collier Bankruptcy Cases 164 (E.D.Tenn.1974). Constructive trusts will also be established to ensure that direct payments from the landowner to the materialmen or laborers either pursuant to a prior agreement or in exchange for an agreement not to file a lien are not held to be voidable preferences under § 60 of the Bankruptcy Act. *See Johnson v. Root Mfg. Co.*, 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934 (1914); *Mullins v. Noland Co.* 406 F.Supp. 206 (N.D.Ga.1975); *Keenan Pipe & Supply v. Shields*, 241 F.2d 486 (9th Cir. 1956). *Cf. San Mateo Feed & Fuel v. Hayward,,* 149 F.2d 875 (9th Cir. 1945) (holding direct payments from landowner to be voidable preference where there was no prior agreement between parties). Since this Court is unable to find authority establishing a construction fund trust in the absence of an explicit state builders trust fund statute, a prior agreement between the parties for direct payment to the subcontractor, or the possession of a valid or inchoate mechanics lien by the subcontractor, we hold that Sequatchie Concrete is not entitled to have the funds owed to Tate held in trust for it.

Let the summary judgment of the chancery court be affirmed. All costs of this appeal are to be taxed to appellant.

GODDARD and FRANKS, JJ., concur.