In re James Ross BARKER, Marilyn Esther Barker, Debtors.

WITT BUILDING MATERIAL COMPANY, INC., Plaintiff,

v.

James Ross BARKER, Defendant.

Bankruptcy No. 3–80–01224.
Adv. No. 3–80–0630.

United States Bankruptcy Court, E. D. Tennessee.

July 15, 1981.

A. L. Witt, Knoxville, Tenn., for plaintiff.

Charles Gordon, Powell, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Section 523(a) of Title 11 of the United States Code states that a discharge under § 727 does not discharge an individual debtor from any debt—

"(4) for fraud or defalcation while acting in a fiduciary capacity. . . ."

This case presents the issue of whether the proceeds of a construction loan made to the defendant constitute trust funds by virtue of T.C.A. § 64–1140 [1] so that the failure of the defendant to apply those funds to the construction project results in a nondischargeable debt.

### I

In October 1978, the Bank of Sevierville agreed to loan the debtor, James R. Barker, and a co-adventurer, Jim Stiles, $80,000 to be used for the construction of two chalet-type houses on real estate in Sevier County, Tennessee, owned jointly by Barker and Stiles. The loans were secured by trust deeds on the jointly owned property. The Bank deposited to the account of Unity Construction Co. the agreed amount of the loan, less $12,500.00 representing the purchase price of the two lots, and $2,673.54 advance interest. [2] Of the amount actually

1. "Misapplication of contract payments.—Any contractor, subcontractor, or other person who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor performed on, or materials furnished by his order for, this specific improvement, while any amount for which he may be or become liable for such labor or materials remains unpaid, shall be guilty of a felony and punished accordingly." T.C.A. § 64–1140.

2. In October of 1978, Unity Construction Company and Allen Smith Construction and Remodeling, Inc. entered into a joint venture

disbursed to the parties, only $18,146.42 was actually expended for the construction of the two houses. The plaintiff insists the remainder, $46,680.04, was used for other purposes.

The plaintiff, Witt Building Material Company, Inc. (Witt), supplied building materials in an amount totaling $17,122.66 to the Allen Smith Construction Co. for the construction of the two chalets. In late January or early February 1979, when it had not been paid for the materials, Witt contacted Barker who apparently assured them that they would be paid. Further, according to Witt, Barker requested that Witt not file a materialmens' lien against the property. Witt has received no payment for the construction materials furnished. According to Witt, Barker, Stiles or their corporation, Unity Construction Company, fraudulently misused the construction loan proceeds.

## II

Section 523(a)(4), successor to § 17(a)(4) of the former Bankruptcy Act, provides that a debt resulting from fraud or defalcation while acting in a fiduciary capacity is nondischargeable in bankruptcy.[3] The term "fiduciary capacity" for the purposes of § 17(a)(4) of the former Bankruptcy Act has been defined on several occasions.

The term "fiduciary capacity" first appeared in the Bankruptcy Act of 1841. In 1844 the U. S. Supreme Court had the opportunity to determine the meaning of "fiduciary capacity." *Chapman v. Forsyth*, 2 How. 202, 11 L.Ed. 236 (1844). The court

held that the term applied only to express or technical trusts and not to implied trusts.[4] In 1934, the Supreme Court reinforced this position in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393. The court, speaking through Mr. Justice Cardozo, quoted from the opinion in *Chapman*, supra:

"[T]he statute [the Bankruptcy Act] 'speaks of technical trusts, and not those which the law implies from the contract.' ... It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393.

This court in *In re Harrill*, 1 B.R. 76 (Bkrtcy.E.D.Tenn.1979), construed the term "fiduciary capacity" as used in § 17(a)(4) of the Bankruptcy Act. After discussion of both *Chapman, supra*, and *Davis, supra*, this court concluded that

"the term 'fiduciary capacity' as used in present § 17a(4) has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trusts ex maleficio, that may be imposed because of the very act of wrongdoing out of which the contested debt arose." *In re Harrill*, 1 B.R. 76, 80.

While § 523(a)(4) is written in a different manner from § 17(a)(4), the changes are not material to the present issue. The term "fiduciary capacity" in § 523(a)(4) will, therefore, be limited in

---

agreement. Allen Smith agreed to construct the two chalets in question. Jim Stiles and James Barker signed the agreement for Unity Construction Company.

**3.** "§ 17. Debts Not Affected by a Discharge. a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as... (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity;...." 11 U.S.C. § 35(a)(4).

**4.** The various types of trusts which are relevant to the present situation are defined as follows:

*Express trust.* A trust created or declared in express terms, and usually in writing.... *Implied trust.* A trust raised or created by implication of law; a trust implied or presumed from circumstances.... *Constructive trust.* A trust raised by construction of law, or arising by operation of law, as distinguished from an express trust.... *Trust ex maleficio.* A species of constructive trust arising out of some fraud, misconduct, or breach of faith on the part of the person to be charged as trustee, which renders it an equitable necessity that a trust should be implied. BLACK'S LAW DICTIONARY 1680, 1681, 1683 (4th ed. 1951).

application to technical or express trusts. 3 Collier on Bankruptcy, ¶ 523.14[1][c] (15th ed. 1979).

## III

Several states have statutes that expressly make funds paid to a contractor for improvements of real property "trust funds." See *Selby v. Ford Motor Company*, 590 F.2d 642 (6th Cir. 1979). Other states, however, have statutes making the misapplication of construction funds a criminal offense. Tennessee is included among the latter states. T.C.A. § 64–1140. *Sequatchie Concrete Service, Inc. v. Cutter Laboratories*, 616 S.W.2d 162 (Tenn.Ct.App. E.S. 1980).

On several occasions courts have construed statutes which make the misuse of construction funds a criminal offense. In the *Matter of Angelle*, 610 F.2d 1335 (5th Cir. 1980), the debtor was constructing several houses at the time the bankruptcy petition was filed. The debtor had received funds from all persons for whom houses were being built and all such funds were placed into one bank account with no attempt to segregate the funds. The debtor admitted that frequently funds had been used to pay general business debts.

The court stated that only express trusts and not implied trusts or trusts ex *maleficio* create a fiduciary relationship for the purposes of § 17(a)(4). The Louisiana statute involved created a fiduciary relationship only when an act of misappropriation had occurred. Because the trust relationship must exist prior to the misappropriation or misuse of the funds the court held the debt dischargeable. The court observed—

"We have our doubts, however, that a statute which merely makes misappropriation of funds a crime—without, for example, requiring segregation of accounts—would be enough to charge the parties with an intent to create a trust." *In the Matter of Angelle*, 610 F.2d 1335, 1340.

*In the Matter of Dloogoff*, 600 F.2d 166 (8th Cir. 1979), the Eighth Circuit held that a builder who received advances for the construction of a garage and failed to apply the advances to the debts created by the use of labor and materials was not a fiduciary. The Court reached its decision despite the existence of a Nebraska law making it illegal for a contractor who receives advances to fail to apply the advances to claims of laborers and materialmen having a right to file a lien.

The plaintiff cites the case of *Selby v. Ford Motor Company*, 590 F.2d 642 (6th Cir. 1979). In that case the bankruptcy trustee was attempting to set aside as preferences under § 60 of the former Bankruptcy Act payments by the contractor made within 4 months of the contractor's bankruptcy. The subcontractors who had received the payments asserted that the payments constituted the corpus of a trust which could not be reached by the trustee. The trustee was held not to have a sufficient interest in the trust fund so that the payments could be recovered.

The Michigan statute involved in *Selby* is distinguishable from the statutes in both *Angelle* and the present case. While the Michigan statute expressly declares construction funds to be trust funds, the statute involved in *Angelle*, like the Tennessee statute, only makes misuse of the funds a criminal offense.[5]

The plaintiff argues that according to the Tennessee Supreme Court § 64–1140 does make construction funds trust funds. *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739 (1965). This was a criminal case in which the defendant was convicted for misapplication of contract payments and sentenced for a term of six months in the county jail. On appeal the determinative issue was the constitutionality of § 64–1140, not whether the construction funds were trust funds. In a statement that can be considered dictum, the court stated that a "statute of this nature is intended to make

---

5. The Michigan statute is quoted by the court as follows:

"In the building construction industry, the building contract fund paid by any person to

a contractor ... shall be considered by this act to be a trust fund,...." Mich.Comp. Laws Ann. § 570.151 (1967). Quoted at 590 F.2d 642, 643.

the payments to the contractor trust funds for the payment of labor and materials, . . . ." *Daugherty,* supra at 741. However, in 1980 the Tennessee Court of Appeals decided the issue of whether construction funds are trust funds.

*Sequatchie Concrete Service, Inc. v. Cutter Laboratories,* 616 S.W.2d 162 (Tenn.Ct. App. E. S. 1980).[6] Sequatchie entered into a contract with Tate Masonry Company to supply concrete for the construction of plant facilities for Cutter Laboratories. Tate Masonry was a subcontractor under a contract between Cutter Labs and R. S. Noonan, Inc., the general contractor. Pursuant to their contract, Sequatchie furnished concrete which was incorporated into the improvements. All of Sequatchie's invoices were signed by Edwin Tate dba Tate Masonry Company. Tate subsequently filed for bankruptcy.

At the time Tate filed his bankruptcy petition, Noonan, the general contractor, owed Tate $8,348.19. Noonan filed a complaint of interpleader asking the court to determine whether the funds should be paid to Tate's trustee in bankruptcy or to Sequatchie. The chancellor held that the funds owed by Noonan to Tate were not trust funds in favor of Sequatchie Concrete. Therefore, the funds passed to Tate's trustee in bankruptcy.

On appeal Sequatchie argued that the funds owed to Sequatchie by Noonan were trust funds. The court of appeals distinguished the two types of construction fund statutes, i. e., those explicitly making construction funds trust funds and those imposing criminal liability for misapplication of the funds. Because § 64–1140 is the only relevant statute, the court concluded that "this court is unable to find authority establishing a construction fund trust in the absence of an explicit state builders trust fund statute, . . . we hold that Sequatchie Concrete is not entitled to have the funds owed to Tate held in trust for it." *Sequatchie Concrete Service, Inc.,* supra.[7]

■ Thus, even if § 64–1140 has the effect of making construction funds trust funds, the trust is not expressly created by the statute, but rather comes into existence only when there is some act of misapplication. This court, therefore, will follow the decision of the Fifth Circuit in *Angelle.* The defendant's debt to the plaintiff is dischargeable in bankruptcy because, if a trust was created, it arose only upon the unlawful act of misapplication of the funds. The trust relationship was not in existence prior to the misapplication. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Harrill,* 1 B.R. 76 (Bkrtcy. E.D. Tenn. 1979).

■ Following the line of decisions which began in 1844, *Chapman v. Forsyth,* supra, the trust relationship for the purpose of § 523(a)(4) must be an express trust. An implied trust or a trust *ex maleficio* which arises as a result of an act of wrongdoing does not create the "fiduciary capacity" required in § 523(a)(4).

Section 64–1140, unlike the statute involved in *Selby v. Ford Motor Company,* 590 F.2d 642, does not create an express trust. *Sequatchie Concrete Service, Inc. v. Cutter Laboratories,* 616 S.W.2d 162 (Tenn. Ct.App. E.S. 1980). Nor did *Selby* involve a dischargeability question under § 17(a)(4) of the Bankruptcy Act, the statute in effect at that time.

*In re Angelle, supra,* was cited and approved by the Ninth Circuit in *In re Pedrazzini,* 644 F.2d 756 (1981). In that case Pe-

---

**6.** On April 27, 1981, the Tennessee Supreme Court denied appellant's application for permission to appeal.

**7.** Prior to this pronouncement by the Court of Appeals, this court had followed the dictum in *Daugherty v. State, supra.* See *In re Hawkins,* BK–2–77–358, E.D. Tenn. (1978). Since an appellate court has now held that, absent an explicit state builders trust fund statute, funds paid to a contractor are not trust funds, the *Daugherty* case does not appear controlling. Further, the scope of concept of "fiduciary," under the exception to discharge in the Bankruptcy Act, is a question of federal law. *In re Angelle, supra.* In *Hawkins,* this court also cited *In re Romero,* 535 F.2d 618 (10th Cir. 1976), rejected by the Fifth Circuit in *In re Angelle, supra,* and by the Ninth Circuit in *In re Pedrazzini,* 644 F.2d 756 (9th Cir. 1981), discussed infra.

drazzini, a swimming pool contractor, contracted with one Runnion for construction of a pool. Runnion made progress payments together with a final payment to Pedrazzini before completion of the contract. After Pedrazzini's bankruptcy, two subcontractors filed mechanics' liens against Runnion's property. Relying upon certain California statutes, Runnion sought determination of nondischargeability under § 17(a)(4) of the former Bankruptcy Act, now § 523(a)(4). The statutes upon which he relied were Cal.Bus. & Prof. Code, §§ 7108, 7108.5 which prescribe disciplinary action for a contractor who diverts funds intended for completion of a project or portion of a project, and for a contractor who fails to pay subcontractors within ten days of the receipt of a progress payment. In addition, the California Penal Code makes criminal the receipt of

"money for the purpose of obtaining or paying for services, labor, materials or equipment and [the willful failure] to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or [the willful failure] to pay for services, labor, materials, or equipment provided incident to such construction, and [the wrongful diversion of] the funds to a use other than that for which the funds were received...." Cal. Penal Code § 484b.

The Court held that the statutes relied on "operate[d] only after an act of wrongdoing has occurred"; further, that "[t]he California statutes do not create the basic elements of a trust. No res is defined and no fiduciary duties are spelled out. Therefore, the statutes do not create a true fiduciary relationship between the parties."

T.C.A. § 64-1140 is a penal statute, similar to the California statute. It does not create the basic elements of a trust. The Court of Appeals of Tennessee has so held. *Sequatchie Concrete Service, Inc., supra.*

### IV

Plaintiff also asserts its debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides that debts for "obtaining money,

property, services, or an extension, renewal, or refinance of credit by—(A) false pretenses, a false representation, or actual fraud..." are nondischargeable. This section is not applicable to the present situation, however.

The plaintiff has not shown that money, property, services, or an extension or renewal of credit was obtained by fraud. The evidence introduced at trial indicates only that as a result of the defendant's representations the plaintiff delayed the filing of a notice of lien upon a promise that the debt would be paid. Such promise, however, does not make the debt nondischargeable in bankruptcy under § 523(a)(2)(A).

"A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach." 1A Collier on Bankruptcy ¶ 17.16[3] (14th ed.).

The debt is dischargeable.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.