In re Arnold Clarice WILSON, a/k/a A.C. Wilson, d/b/a A.C. Wilson Construction Co. and Doris Jean Wilson, Debtors.

A.C. WILSON, Plaintiff,

v.

Jerry ESTES, Attorney General of McMinn County; James Hutchins; Larry Wattenbarger, and Jeanne Wattenbarger, Defendants.

Bankruptcy No. 3–80–00765.
Adv. No. 3–82–0924.

United States Bankruptcy Court,
E.D. Tennessee.

April 18, 1983.

Fowler & Rowntree, John H. Fowler, Knoxville, Tenn., for plaintiff.

Jerry L. Smith, Asst. Atty. Gen., Nashville, Tenn., for defendant Jerry Estes.

James D. Hutchins, pro se.

Larry Wattenbarger, pro se.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This case involves a request for an injunction[1] to prohibit continuation of criminal prosecution of plaintiff Wilson for alleged violations of Tenn.Code Ann. § 66–11–138 (1982).[2] Plaintiff insists the crimi-

---

1. Plaintiff requests the issuance of the injunction against the four individual defendants, including Jerry Estes, a district attorney general. In effect, however, plaintiff's request is one for injunctive relief against the State of Tennessee.

2. *Misapplication of contract payments—Felony.—*

Any contractor, subcontractor, or other person who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property

nal prosecution has been undertaken in bad faith in an attempt to effect collection against obligations from which he was duly discharged in bankruptcy, 11 U.S.C.A. § 524 (1979).[3] Defendant Estes, a district attorney general, denies the criminal action against plaintiff was undertaken in bad faith; he also maintains requiring restitution as a condition of pre-trial diversion,[4] denied to plaintiff, is consistent with the good faith administration of the state criminal statutes with which he is charged.

The State of Tennessee filed a motion to dismiss for want of jurisdiction of the subject matter on January 25, 1983. The State's motion is denied on the authority of *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983), wherein a three-member panel held the grant of jurisdiction to the district courts embodied in 28 U.S.C.A. § 1471(a) and (b) (Supp.1982) is unaffected by the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The court of appeals further held that the interim rule for the administration of the bankruptcy court, initially promulgated by the Judicial Conference and adopted pursuant to a directive from the Judicial Council of the Sixth Circuit, neither violates federal constitutional principles nor conflicts with the holdings of the Supreme Court in *Marathon.*

## I

Plaintiff A.C. Wilson contracted with defendants Larry Wattenbarger and Jeanne Wattenbarger, husband and wife, to construct a dwelling for them. The Wattenbargers allegedly paid approximately $34,000.00 to plaintiff pursuant to their construction contract. However, only a portion of the amount paid was actually expended for the construction of the dwelling. As a result, several lawsuits involving mechanics' and materialmen's liens were filed against the Wattenbargers.

Plaintiff Wilson filed his voluntary chapter 7 bankruptcy petition on May 30, 1980. During July 1980, the Wattenbargers caused an indictment to be issued accusing Wilson of misapplication of contract payments in violation of Tenn.Code Ann. § 66–11–138 (1982). The indictment, however, was faulty and was therefore dismissed on a date not disclosed in the record herein.

Also during July 1980, acting through their attorney, James Hutchins, also a defendant herein, the Wattenbargers filed a complaint against A.C. Wilson, seeking to except the aggregate amount of the mechanics' and materialmen's liens against their property from Wilson's discharge in bankruptcy. (Adv.Proc. No. 3–80–0352). The Wattenbargers contended Wilson defrauded them while acting in a fiduciary capacity, thereby rendering his obligation to

---

for any other purpose than to pay for labor performed on, or materials furnished by his order for, this specific improvement, while any amount for which he may be or become liable for such labor or materials remains unpaid, shall be guilty of a felony and punished accordingly.

3. *Effect of discharge*
 (a) A discharge in a case under this title—
 . . . . .
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived . . . .

4. Tenn.Code Ann. § 40–15–105 (1982) provides, with exceptions immaterial herein, that a defendant and the prosecuting attorney may

enter into a memorandum of understanding wherein it is agreed prosecution will be suspended for a specified period of not more than two (2) years. There are numerous conditions to which the defendant may be required to consent during the period of suspension of prosecution, including restitution for the loss caused by defendant's offense, if restitution is within defendant's capability. Tenn.Code Ann. § 40–15–105(a)(2)(D) (1982).

Any warrant or charge against the defendant shall be dismissed with prejudice upon the expiration of ninety (90) days from and after the concluding date of the period of suspension stated in the memorandum of understanding, provided the memorandum of understanding was not terminated during the period of its efficacy. Tenn.Code Ann. § 40–15–105(e) (1982).

them nondischargeable, 11 U.S.C.A. § 523(a)(4) (1979). A motion for summary judgment was filed on May 7, 1981, by Wilson. This court entered an order on July 27, 1981, sustaining his motion.[5] An order granting Wilson his general discharge was entered on September 23, 1981.

A second indictment accusing plaintiff Wilson of violations of Tenn.Code Ann. § 66–11–138 (1982) was issued at the instance of the Wattenbargers during August 1982. After Wilson was unable to reach an agreement for pre-trial diversion with the State of Tennessee, he sought to compel the State to enter into such an agreement by requesting the McMinn County Criminal Court to find an abuse of prosecutorial discretion. Tenn.Code Ann. § 40–15–105(b)(3) (1982).[6] When that court denied his request Wilson appealed to the criminal court of appeals, which entered an order staying prosecution of Wilson on the accusations recited in the second indictment pending review of the trial court's denial of Wilson's petition to compel the State to offer him pre-trial diversion.

On October 7, 1982, during the pendency of his petition in state court to compel an offer of pretrial diversion, plaintiff Wilson filed a complaint commencing the instant adversary proceeding. Wilson requests this court to permanently enjoin the criminal prosecution against him for his alleged violations of Tenn.Code Ann. § 66–11–138 (1982).

## II

The proof adduced at the hearing on January 27, 1983, reveals that the former authorized agents of the State of Tennessee demonstrated little or no interest in criminally prosecuting plaintiff Wilson. Shortly after Wilson was initially indicted in July 1980, Clifford E. Wilson, Esq., the plaintiff's brother, contacted Steve Bebb, a former assistant district attorney, concerning the indictment of A.C. Wilson. Bebb advised him that James Hutchins had been appointed special prosecutor in the State's case against A.C. Wilson.[7] Consequently, Bebb urged Clifford E. Wilson to discuss the criminal case against his brother with Hutchins, who had filed the nondischargeability complaint on behalf of the Wattenbargers against A.C. Wilson. According to Clifford E. Wilson, Hutchins advised him he was authorized by the Wattenbargers to accept $4,000.00 cash and a note for $10,-000.00, secured by a third deed of trust against A.C. Wilson's home, payable over a three to five year period in return for a dismissal of the criminal action against plaintiff Wilson. (Hutchins also represented the Wattenbargers in the mechanics' and materialmen's lawsuits against them.) No response to the offer was made by Clifford E. Wilson, except he did inform Hutchins he was disturbed by the fact it appeared criminal process was being employed for the purpose of collecting a civil debt. Hutchins reportedly responded, "No . . . . [W]e were getting nowhere in bankruptcy court or in chancery court and we had to do something."

Hutchins testified[8] he was asked to assist in the State's prosecution of A.C. Wilson

5. The payment of construction proceeds to a contractor by an owner does not create a trust within the technical meaning of the term "trust" necessary to establish a fiducial relationship for the purpose of 11 U.S.C.A. § 523(a)(4) (1979). *Kannon v. Blalock*, 15 B.R. 33 (Bkrtcy.E.D.Tenn.1981); *Witt Bldg. Material Co., Inc. v. Barker*, 14 B.R. 852 (Bkrtcy.E.D. Tenn.1981). *See also Sequatchie Concrete Serv. v. Cutter Laboratories*, 616 S.W.2d 162 (Tenn.App.1980).

6. This provision enacts in apposite part:
The defendant shall have a right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. If the trial court finds that the prosecuting attorney has abused his discretion in failing to divert, the trial court may order the prosecuting attorney to place the defendant in a diversion status on such terms and conditions as the trial court may order.

7. Tenn.Code Ann. § 40–3–104 (1982) provides: "All criminal actions are prosecuted in the name of the State of Tennessee against the party charged with the offense."

8. After opening remarks at the hearing on January 27, 1983, it was obvious James Hutchins was a necessary witness and that his representation of the Wattenbargers in this case should

during August 1980, but he could not remember whether the request for his assistance preceded his meeting with Clifford E. Wilson. Hutchins further testified no one ever told him he had been appointed as a special prosecutor. He testified unequivocally that he was not authorized to settle the criminal case against A.C. Wilson on behalf of the State of Tennessee. Until September 1982, when he was asked to take the lead in the case, Hutchins had thought his role in the criminal prosecution of plaintiff Wilson was limited to merely offering assistance.

Martha Meares was retained by plaintiff Wilson during July 1981, to defend him in the McMinn County criminal proceeding. It is Meares' testimony that she discussed pre-trial diversion for her client with both the former district attorney general (the predecessor of defendant Estes) and his former assistant, Steve Bebb. She was also told James Hutchins had been appointed as special prosecutor and was advised she should work with Hutchins on the matter of pre-trial diversion for Wilson. Meares does not recall when she and Hutchins initially discussed the criminal case against Wilson. However, a letter dated December 23, 1981, (Exh. 7) from Meares to Hutchins recites an offer of $7,000.00 in settlement of the matter of "Larry S. Wattenbarger, et ux vs. Arnold Clarice Wilson, et ux." (No case number is stated in this letter.) The settlement offer was contingent upon Wilson's placement in pre-trial diversion. Meares received the following reply from Hutchins in a letter dated February 19, 1982 (Exh. 2):

> In accordance with our conversation of February 17, 1982, I must reject your offer of $7,000.00. The suppliers have rejected my offers based upon your offer and the amounts the suppliers are requesting to settle are out of my clients (sic) reach. If Mr. Wilson could come up with $6,600.00 more, the case can be resolved.

cease. Code of Professional Responsibility DR 5–102. (Withdrawal as Counsel When the Lawyer Becomes a Witness.) The court proceeded to receive testimony with the understanding the record would be transcribed and the Wattenbargers would be allowed to retain

Also, for your information, the cases were rescheduled for March 1, 1982.[9]

Hutchins contends his letter was directed to the settlement of the civil disputes involving the Wattenbargers and plaintiff Wilson. It is Hutchins' testimony he would have recommended pre-trial diversion for Wilson if the requested $13,600.00 had been paid to the Wattenbargers. However, Hutchins insists he did not have authority to either enter into a memorandum of understanding for pre-trial diversion or dismiss the indictment against Wilson.

The counter-offer to settle for $13,600.00 was not accepted by Wilson. When Meares failed to reach an agreement with Hutchins, she continued her efforts to obtain pre-trial diversion for Wilson by contacting the office of the former district attorney general. Her efforts were apparently futile.

On or about September 1, 1982, defendant Estes assumed the duties of district attorney general for an area encompassing McMinn County. Meares' letter to Estes of September 3, 1982 (Exh. 3), requesting consideration of her client for pre-trial diversion recites in part:

> Shortly before you took office I had requested that your predecessor General Fisher consider Mr. A.C. Wilson, who was indicted for misapplication of contract funds case # 9923, a proper person to come under the diversion laws of our State. Having never received a reply from General Fisher I now request that you do the same.
>
> . . . . .
>
> It is quite obvious that this criminal prosecution has heretofore been an endeavor to collect money, which under the laws of the United States he no longer is obligated to pay. Numerous offers have been made to me by the special prosecutor that

other counsel who would be permitted to recall and examine any witness testifying on January 27, 1983.

9. Presumably these cases involved the materialmen's and mechanics' lien claims.

if we would pay a certain amount of money then this case would either be dropped or diverted. If Mr. Wilson was in a position that he could have obtained this money in some manner, he would have literally bought his freedom many months ago. I implore your full consideration, and if there is some application which your office requires or additional information needed I will be more than happy to provide these to you.

According to Meares, no reply was received from defendant Estes.

As previously noted, having failed to reach an amicable agreement providing for pre-trial diversion, plaintiff Wilson thereafter unsuccessfully petitioned the McMinn County Criminal Court to compel the State to grant him pre-trial diversion.

James F. Watson, an incumbent assistant district attorney, testified he did ask Hutchins, on a date subsequent to September 1, 1982, to take the lead in the criminal case against Wilson. However, Watson also testified that a special prosecutor acts only under the authority of the district attorney general's office and that Hutchins has not had authority to dismiss the criminal case against Wilson since September 1, 1982, and probably did not prior thereto.

A motion to dismiss for failure to state a claim for which relief could be granted was filed on behalf of defendant Estes by the Attorney General for the State of Tennessee on November 26, 1982. The State asserts the issuance of an injunction preventing criminal prosecution of plaintiff Wilson would be an unwarranted intrusion by the bankruptcy court upon the administration of the criminal laws of the State of Tennessee, since there is no evidence either defendant Estes or any other state official has acted in bad faith or that Wilson will suffer irreparable harm if an injunction is not issued.

Plaintiff Wilson controverts the State's assertion none of its officials have acted in bad faith in connection with the criminal action against him. Plaintiff contends the criminal action is merely a subterfuge to collect a debt discharged in bankruptcy.

III

At the outset, it should be observed the relief requested by plaintiff Wilson is extraordinary. Title 28, Section 2283 of the United States Code enacts: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

■ Although this court would not refrain from issuing an injunction restraining a state civil proceeding if patently necessary to enforce an order granting a discharge, the restraint of a state criminal proceeding is a different matter. The issuance of a federal court injunction in restraint of a pending state criminal proceeding is a very grave step. A federal court should decline to enjoin a state court criminal proceeding absent evidence of bad faith prosecution or the pendency of a prosecution which is only one of a series of repeated prosecutions to which the petitioner will be subjected; great and immediate, irreparable injury to the petitioner; or other extraordinary circumstances. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In a companion decision to *Younger,* the Court observed that a good faith attempt to enforce a state's criminal laws should not be impeded or interrupted by the issuance of a federal court injunction:

> Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.

*Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971).

Wilson avers the criminal action against him has been undertaken in bad faith. The record does suggest an abdication of authority by the former district attorney general after the issuance of the first indict-

ment. Furthermore, the interest of the State of Tennessee, acting by and through the district attorney general's office, *appears* to have previously been limited to the formation of an agreement, between Hutchins and Meares, providing for some restitution for the Wattenbargers and pretrial diversion for Wilson.

 Tenn.Code Ann. § 40–15–105 (1982) permits the suspension of prosecution of certain defendants pursuant to a memorandum of understanding—

> [p]rovided, that prosecution of the defendant shall not be suspended unless the parties, in the memorandum of understanding, also agree that the defendant observe one or more of the following conditions during the period in which the prosecution is suspended:
>
> . . . . .
>
> (D) That in the proper case he make restitution in a specified manner for harm or loss caused by the offense, if restitution is within his capabilities;
>
> . . . . .

Restitution to an aggrieved party is manifestly a legitimate consideration in the prosecutor's evaluation of a defendant's eligibility for pre-trial diversion. The fact that Wilson's eligibility for pre-trial diversion was at one time apparently contingent upon his restitution for an obligation from which he had been discharged in bankruptcy does not establish a prima facie case of bad faith on the part of the prosecution.

 Regardless of the inactive role of the former district attorney general's office and the suspect appointment of Hutchins as special prosecutor, unbeknownst to Hutchins, the court declines to find this is a proper case to restrain the state criminal proceeding. There is no cogent, convincing evidence that the criminal action against Wilson was undertaken in bad faith without any hope of obtaining a criminal conviction. See *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). Admittedly, restitution by Wilson to the Wattenbargers would probably have resulted in a memorandum of understanding and the suspension of the criminal prosecution. See Transcript of Evidence (Exh. 5) at 21–23. However, restitution to an aggrieved party may be required as a condition of probation of a federal defendant even though the debt owing to the aggrieved party and occasioned by the criminal offense has been discharged in bankruptcy. *United States v. Carson,* 669 F.2d 216 (5th Cir.1982).[10] Similarly, this court is of the opinion a discharge in bankruptcy from an obligation owed to an aggrieved party should not exempt or insulate a criminal defendant from making restitution as a condition precedent to a prosecutorial grant of pre-trial diversion.

Furthermore, James F. Watson testified the State's case against plaintiff Wilson is not being prosecuted for the purpose of collecting a debt. Watson's affidavit, filed on December 27, 1982, recites in pertinent part:

> 3. Given the nature of defendant's crime, I determined that restitution was a proper and necessary element in any pretrial diversion program for defendant. That decision was not an attempt to collect a civil debt from defendant, for any party, but was rather an attempt to im-

---

**10.** Carson forged the signature of another party in furtherance of a scheme to obtain a $39,-000.00 loan from Fulton National Bank (FNB). Although Carson's fraud was discovered in March 1978, and the loan was never repaid, Carson's obligation to FNB was discharged in bankruptcy in March 1979, without any objection by FNB.

Carson was convicted, however, of violating 18 U.S.C.A. § 1014 (1976) (making a false statement to influence the action of a bank insured by the Federal Deposit Insurance Corporation) during January 1980, and sentenced to two years, with six months to be served in prison and the balance suspended. The court, pursuant to 18 U.S.C.A. § 3651 (Supp.1982), placed Carson on probation for five years, upon the condition he make restitution to FNB in the amount of its loss occasioned by his offense. (The statute provides in material part that restitution to an aggrieved party for the loss occasioned by the offense supporting the conviction may be required as a condition of probation.) Carson unsuccessfully contended the sentencing court abused its discretion by conditioning his probation upon restitution for a debt which had been discharged in bankruptcy.

**98**

pose conditions showing defendant's suitability for a diversion program. It was felt that if defendant would escape criminal prosecution through a diversion program, than (sic) defendant should show his willingness to correct the wrongful effects of his actions.

### IV

Plaintiff has not established either bad faith on the part of the State in the commencement of the criminal case against him or that he will sustain great and immediate, irreparable injury as a result of the prosecution thereof. The court's refusal to restrain the state criminal proceeding obviously does not reflect upon Wilson's guilt or innocence of the accusations in the second indictment. Wilson may be innocent of the accusations and successfully defend against the criminal prosecution. However, this court will not enjoin that prosecution and deny the State the opportunity to establish that Wilson has violated a Tennessee criminal statute.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.